Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
(503) 351-2327
Fax (503) 914-6665
bwnlaw@gmail.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MICHAEL G. SCHWERN, | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | Defamation; Intentional Infliction of Severe Emotional Distress; Intentional Interference with Prospective Economic Relations |
| NÓIRÍN PLUNKETT, | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

*Good name in man and woman, dear my lord,*
*Is the immediate jewel of their souls.*
*Who steals my purse steals trash. 'Tis something, nothing:*
*'Twas mine, 'tis his, and has been slave to thousands.*
*But he that filches from me my good name*
*Robs me of that which not enriches him*
*And makes me poor indeed.*

*— Shakespeare,* Othello, *Act III, Scene 3*

COMPLAINT – Page 1

## INTRODUCTION

### 1.

This is a civil action for damages brought by plaintiff Michael G. Schwern against his ex-wife, defendant Nóirín Plunkett. Plaintiff and defendant are both internationally renowned open source computer software experts and activists for women's rights in the open source software development community. Defendant intentionally, falsely, and without privilege claimed to third parties that plaintiff had sexually assaulted her and subjected her to intimate partner violence. Plaintiff has suffered immediate, severe, and lasting damage to his professional, volunteer, and social lives and to his reputation, together with profound emotional harm. Plaintiff states claims for defamation, intentional infliction of severe emotional distress, and intentional interference with prospective economic relations.

## PARTIES

### 2.

Plaintiff is an adult citizen of the United States and the state of Oregon who has resided in Portland, Oregon at all times material to this complaint. Plaintiff is one of the top developers working in the Perl programming language in the world today. He is a frequently invited speaker at conferences pertaining both to open source programming and to gender equity in the software world. He has been a sought-after consultant to multiple companies and organizations. Plaintiff participates in professional, volunteer, and social networks of colleagues and friends in multiple states and countries, many of which communicate heavily over the internet.

### 3.

Defendant is an adult citizen of Ireland and legal permanent resident of the United States

who resided in Portland, Oregon for most of the time when she was committing the acts giving rise to this complaint. Defendant now resides in Cambridge, Massachusetts. Defendant has spent many years working and volunteering in fields that overlap very significantly with plaintiff's work and volunteer life. Defendant is amply acquainted with plaintiff's professional and personal contacts and activities. Defendant and plaintiff were previously married, but are now divorced, with the divorce judgment having become final on October 1, 2013.

## JURISDICTION AND VENUE

### 4.

Jurisdiction for this claim exists under 28 U.S.C. §1332(a)(2) because the matter in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between a citizen of a state and a citizen of a foreign state who was lawfully admitted for permanent residence in the United States and who is domiciled in a different state.

### 5.

Venue is proper in this case under 28 U.S.C. §1391(b)(2) because a substantial part of the acts and omissions giving rise to the claim occurred in Multnomah County, Oregon.

## FACTS

### A. Background

### 6.

The parties met by dint of their shared professional interests. They became intimate, and married. Defendant moved to Portland. The parties rented a house together.

7.

The parties had a sexual relationship throughout their marriage. This relationship included various activities commonly referred to as BDSM (bondage, domination, and sadomasochism). All the parties' BDSM activities were entirely consensual.

8.

The parties' marriage did not endure. In November 2012, plaintiff moved into an apartment, leaving defendant living in the parties' rented house. By September 2013, the parties had resolved to divorce. The parties filed divorce documents by mutual consent on September 19. Defendant planned to move to Massachusetts on September 23.[1]

9.

On September 19, several hours after filing their divorce documents, the parties planned to have a final date together. They met at plaintiff's house (in which defendant was living and plaintiff was not living at that point). The parties talked and had sex. They engaged in consensual BDSM activities as part of the sex.

**B. Defendant Unsuccessfully Pursued Criminal Charges Against Plaintiff.**

10.

On the night of September 19, defendant intentionally and falsely claimed to medical personnel and police that plaintiff had raped or sexually abused her and had been violent toward her.

11.

Officers of the Portland Police Bureau arrested plaintiff late that same night. Plaintiff cooperated with the arrest. Plaintiff was originally booked on misdemeanor charges of

---

[1] All subsequent dates in this complaint are in 2013 unless another year is given.

COMPLAINT – Page 4

strangulation and harassment. Plaintiff was released from jail and appeared in court for arraignment on September 23. At that time, plaintiff learned that the Multnomah County District Attorney's Office had declined to issue a criminal complaint against him.

12.

On September 30, plaintiff's counsel spoke with Senior Deputy District Attorney Christine Mascal in order to ascertain whether the case would remain in no-complaint status. Ms. Mascal said that defendant would be testifying to a grand jury in October about sexual offenses that plaintiff had allegedly committed against defendant. Ms. Mascal added that the grand jury would welcome hearing from plaintiff also. Counsel retained a private investigator and conducted an investigation of the facts and circumstances. Counsel determined that the evidence exonerated plaintiff. Counsel presented this evidence to Ms. Mascal and her colleague, Deputy District Attorney Laura Maurer. Counsel also told Ms. Mascal and Ms. Maurer that plaintiff would gladly testify before the grand jury. After receiving this information from counsel, on October 23, Ms. Maurer left counsel a voicemail explaining that her office would be cancelling the grand jury and not proceeding with the criminal case against plaintiff.

**C. Defendant Defamed Plaintiff in Such a Way as to Spread False Information About Plaintiff Across the Internet.**

13.

In addition to her statements to medical personnel, police, and prosecutors, defendant, on and after September 19, 2013, intentionally made false and unprivileged claims to other third parties that plaintiff had sexually abused defendant and subjected defendant to intimate partner violence.

COMPLAINT – Page 5

14.

Plaintiff learned of the false claims that defendant was making about him by three means: posts on Twitter, public statements by organizations with which plaintiff and defendant had both been involved, and the behavior of friends. The various republications of defendant's false claims, and their ramifications, can all be traced back to defendant's intentional acts.

15.

On September 21, prominent open source software developers Ashe Dryden and Leigh Honeywell both tweeted that plaintiff had been arrested for attacking defendant. Fellow developer Tim Chevalier made a similar tweet on September 22. On information and belief, Ms. Dryden, Ms. Honeywell, and Mr. Chevalier were all republishers of defendant's unprivileged false claims about plaintiff, and based their tweets on these claims.

16.

The Ada Initiative is a nonprofit association that, according to its mission statement, "helps women get and stay involved in open source, open data, open education, and other areas of free and open technology and culture." Through its own conferences and its participation in other conferences and events and online dialogue generally, the Ada Initiative claims on its website to have reached over two million people in the three years since its founding. Valerie Aurora, one of the founders of the Ada Initiative, has been friends with both parties. Both parties have done extensive volunteer work on the Ada Initiative's behalf.

17.

On September 25, the Ada Initiative published a blog post on its website entitled "The Ada Initiative does not support Michael Schwern's ally work." This post can be viewed at http://adainitiative.org/2013/09/the-ada-initiative-does-not-support-michael-schwerns-ally-work/.

COMPLAINT – Page 6

The post contains the statement "The Ada Initiative declines now and in future to work with Michael Schwern or to promote his work based on the information above" about plaintiff's arrest. On information and belief, Ada Initiative leaders, in publishing this post, were basing their decision on unprivileged false claims by defendant. The Ada Initiative has subsequently added links to these negative claims about plaintiff to its previously published blog posts about plaintiff's work on the Ada Initiative's behalf.

18.

On September 30, the Geek Feminism blog, another institution in open source feminist culture to which both parties had previously contributed, published a post on its website entitled "Co-Signing the Ada Initiative's Statement on Michael Schwern." This post can be viewed at http://geekfeminism.org/2013/09/30/co-signing-the-ada-initiatives-statement-on-michael-schwern/. The post endorses the claims made in the September 25 post described in paragraph 17, *supra*. The post is co-signed by seven individuals, three of whom — Ashe Dryden, Leigh Honeywell, and Tim Chevalier — had tweeted about plaintiff's arrest as described in paragraph 15, *supra*. On information and belief, at least some of the authors of the Geek Feminism post were basing their decision to post it on unprivileged false claims by defendant.

19.

Stumptown Syndicate is a nonprofit organization that coordinates many open source community activities in Portland and with which plaintiff had long been an active contributor. On November 18, Stumptown Syndicate published a blog post on its website authored by its president, Christie Koehler, entitled "Regarding Michael Schwern." This post can be viewed at http://stumptownsyndicate.org/2013/11/18/regarding-michael-schwern/. Stumptown Syndicate asserted in the post that plaintiff's "actions harmed another community member." Therefore, the

COMPLAINT – Page 7

post continues, "The Stumptown Syndicate Board has concluded that the safety and well-being of our community is best served by not allowing Schwern to attend our events or other activities until such time as we indicate it is appropriate for him to resume involvement." On information and belief, Ms. Koehler and the Stumptown Syndicate Board were basing their decision to publish this post on unprivileged false claims by defendant.

20.

Around the first week of September, Robert Young, a friend of defendant's, told Jessica Stroia, a friend of plaintiff's, that defendant was planning to stay with Mr. Young in the near future. On September 19, around 9:25 p.m., after the parties had had sex and gone their separate ways but before plaintiff was arrested, Mr. Young text messaged Ms. Stroia and told her not to tell anyone that defendant was going to be staying with him. On information and belief, Mr. Young acted as he did because defendant was planning her campaign against plaintiff with his unwitting connivance, and because defendant had made unprivileged false claims about plaintiff to Mr. Young.

21.

Talena Gandy has been a friend of both parties. Ms. Gandy moved from Portland to the Boston area before defendant did. Ms. Gandy subsequently stopped speaking with plaintiff. On information and belief, Ms. Gandy did so because defendant made unprivileged false claims about plaintiff to her.

22.

In Boston, Massachusetts, Casey West, an old friend of plaintiff's, encountered defendant after plaintiff's September arrest. Defendant intentionally and falsely told Mr. West that plaintiff had raped her with a knife. Defendant also intentionally and falsely told Mr. West that plaintiff's

work with open source software was all a ploy to get closer to defendant's friends so that

plaintiff could control defendant and interfere with defendant's ability to tell people about

plaintiff's supposed abuse of defendant.

23.

All of these various communications and others like them, originating from defendant,

were republished in multiple ways across the internet, reaching the eyes of plaintiff's former

employers and potential future employers, members of organizations with whom plaintiff had

volunteered or hoped to volunteer or before whom plaintiff had spoken or hoped to speak, and

friends and acquaintances of plaintiff.

**D. Plaintiff's Career in the Open Source Software Movement and His Avocation Working
   for Gender Equity in High Tech Have Been Devastated By Defendant's Defamation of
   Plaintiff.**

24.

By its nature, the open source software movement depends heavily on an ongoing free

and open exchange of information among its participants. Plaintiff and defendant are both

exceedingly well versed in this information exchange and the interpersonal dynamics

undergirding it. Plaintiff and defendant both understand that the open source movement would

not be where it is today without the many professional conferences at which its members meet

and do business.

25.

Stumptown Syndicate produces the Open Source Bridge conference. Open Source Bridge

is an increasingly important conference in the open source software movement. Plaintiff has been

a featured speaker at nearly every Open Source Bridge conference that has been held. Now that

Stumptown Syndicate has publicly declined to associate itself with plaintiff, plaintiff will lose

COMPLAINT – Page 9

the ability to speak at and participate in Open Source Bridge. This will cost plaintiff numerous professional networking and economic opportunities and has already caused plaintiff serious mental harm and severe emotional distress.

26.

As a direct and proximate result of defendant's defamation of plaintiff, members of the Stumptown Syndicate Board of Directors, including but not limited to Melissa Chavez, who plaintiff had previously known as friends, have disassociated themselves from plaintiff. This has caused plaintiff serious mental harm and severe emotional distress.

27.

O'Reilly Media is a leading publisher of educational materials about software, including open source software. O'Reilly Media produces the Open Source Conference, which is the foremost annual open source event in the world. Plaintiff and defendant were both instrumental in creating a code of conduct for the Open Source Conference aimed at combating sexual harassment and other discriminatory behaviors on the part of participants. An announcement about the promulgation of this code of conduct may be viewed on the Ada Initiative website at https://adainitiative.org/2011/07/oreilly-announces-anti-harassment-code-of-conduct/.

28.

Defendant has previously arranged to have participants ejected from the Open Source Conference. On information and belief, defendant made her defamatory remarks about plaintiff partially in order to create the preconditions for getting plaintiff ejected from future Open Source Conferences. If that were to happen, plaintiff would suffer a further loss of professional, economic, and personal opportunities. The likelihood of it happening, in view of the ways in which defendant's defamatory remarks about plaintiff have already been promulgated online, has

COMPLAINT – Page 10

already caused plaintiff serious mental harm and severe emotional distress.

29.

Plaintiff has historically earned significantly less than his true earning capacity because he has preferred to work less than full time in order to devote more time to his numerous volunteer pursuits and because he has enjoyed having a flexible schedule with many opportunities for travel. For these reasons, for the last few years, plaintiff has put together consulting and teaching opportunities and speaking honoraria to make an annual income of approximately $30,000 before taxes. If plaintiff were to receive any of the many salaried jobs in his professional field for which he is well-qualified, he would easily be able to demand more than $130,000 per year.

30.

Defendant's poisoning of the professional well against plaintiff has cost plaintiff job opportunities with prospective employers. Due to the persistence of information on the internet and the widespread condemnation with which actual sexual assault and intimate partner violence are rightly met, the effects of defendant's false accusations of sexual assault and intimate partner violence will likely operate to deny these opportunities for more than 10 years into the future. Thus plaintiff is likely to lose future economic opportunities worth more than $1,000,000 ($100,000 per year in increased salary over a minimum of 10 years) as a direct and proximate result of defendant's misconduct. This state of affairs has also caused plaintiff serious mental harm and severe emotional distress.

31.

Throughout late 2013, plaintiff was contemplating applying for a salaried job at the Mozilla Corporation, which coordinates the development of the Firefox web browser and the

Thunderbird email client, among other open source software projects. Defendant was aware of this. Ms. Koehler, the president of Stumptown Syndicate, is a senior project manager at Mozilla. On information and belief, defendant's defamation of plaintiff biased Ms. Koehler and other senior employees of Mozilla against plaintiff so that Mozilla would refuse to hire plaintiff if he applied for a job with them. This would deprive plaintiff of significant economic opportunities. Further, the knowledge of Mozilla's likely disposition toward plaintiff has caused plaintiff serious mental harm and severe emotional distress.

32.

As a direct and proximate result of defendant's defamation of plaintiff, companies whose employees sit on the Ada Initiative's Board of Directors or who are sponsors of the Ada Initiative (including but not limited to Google, Puppet Labs, DreamHost, DreamWidth, RedHat, Dyn, Heroku, O'Reilly Media, and Mozilla) now likely will not hire plaintiff. This would deprive plaintiff of significant economic opportunities. It has already caused plaintiff serious mental harm and severe emotional distress.

**FIRST CLAIM FOR RELIEF**

**(Defamation)**

33.

Plaintiff realleges and incorporates each allegation contained in paragraphs 1-32.

34.

Defendant intentionally made and published to third parties defamatory statements of and concerning plaintiff, which can be summarized as false accusations that plaintiff had sexually assaulted defendant and subjected defendant to intimate partner violence.

COMPLAINT – Page 12

35.

This conduct caused harm to plaintiff's reputation, future earning capacity, professional and social standing, intimate relationships, and emotional well-being as further alleged in paragraphs 44 and 45, below.

**SECOND CLAIM FOR RELIEF**

**(Intentional Infliction of Severe Emotional Distress)**

36.

Plaintiff realleges and reincorporates each allegation contained in paragraphs 1-32.

37.

The above-described conduct by defendant constituted an extraordinary transgression of the bounds of socially tolerable conduct, and was intended to cause severe emotional distress to plaintiff, or, in the alternative, was done with knowledge that such distress on plaintiff's part was substantially certain to result.

38.

This conduct caused severe emotional distress to plaintiff, including the consequences set forth in paragraphs 44 and 45, below.

39.

Defendant engaged in this conduct maliciously.

## THIRD CLAIM FOR RELIEF

### (Intentional Infliction with Prospective Economic Relations)

40.

Plaintiff realleges and reincorporates each allegation contained in paragraphs 1-32.

41.

Plaintiff had professional or business relationships with software, web design, and publishing companies including but not limited to Google, Puppet Labs, DreamHost, DreamWidth, RedHat, Dyn, Heroku, O'Reilly Media, Mozilla, and Copious. These relationships could have earned plaintiff at least $100,000 more per year than he is currently earning.

42.

Defendant intentionally interfered with these relationships through the improper means of false accusations of sexual assault and intimate partner violence, or for an improper purpose.

43.

This conduct caused harm to plaintiff's reputation, future earning capacity, professional and social standing, intimate relationships, and emotional well-being as further alleged in paragraphs 44 and 45, below.

## DAMAGES

44.

As a result of defendant's conduct as alleged under any of the above theories that may be proven at trial, plaintiff suffered economic damages for lost future income in the amount of $1,000,000, all of which was reasonably foreseeable. Plaintiff therefore merits an award of economic damages in an amount to be proven at trial, but at least $1,000,000.

COMPLAINT – Page 14

45.

As a result of defendant's conduct as alleged under any of the above theories that may be proven at trial, plaintiff suffered the following noneconomic damages, all of which were reasonably foreseeable:

(a)  Harm to his reputation;

(b)  Reduction in future career opportunities;

(c)  Reduction in future volunteer and community service opportunities;

(d)  Reduction in future social opportunities;

(e)  Reduction in future intimate relationships;

(f)  Mental suffering and emotional distress; and

(g)  Inconvenience and interference with other usual and everyday activities, apart from gainful employment.

Plaintiff therefore merits an award of noneconomic damages in an amount to be proven at trial, but at least $5,000,000.

46.

As a result of defendant's malicious and intentional infliction of severe emotional distress on plaintiff, plaintiff merits an award of punitive damages in an amount equal to four times the total of his economic and noneconomic damages.

**PRAYER FOR RELIEF**

47.

WHEREFORE, plaintiff prays for judgment against defendant as follows:

a.     For an award of economic damages in an amount to be proven at trial, but at least

COMPLAINT – Page 15

$1,000,000;

b.      For an award of noneconomic damages in an amount to be proven at trial, but at

least $5,000,000;

c.      On his claim of intentional infliction of severe emotional distress, for an award of

punitive damages in an amount equal to four times the total of his economic and

noneconomic damages on that claim;

3.      For his costs and disbursements; and

e.      For such other relief as the law permits and justice requires.


## DEMAND FOR JURY TRIAL

48.

Pursuant to Fed. R. Civ. P. 38 and LR 38-1, plaintiff respectfully demands a jury trial.


RESPECTFULLY SUBMTTED January 27, 2014,


/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Plaintiff


COMPLAINT – Page 16