IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL G. SCHWERN,

        Plaintiff,

                                   3:14-CV-146-PK

v.                                   FINDINGS AND
                                   RECOMMENDATION

NÓIRÍN PLUNKETT,

          Defendant.

PAPAK, Magistrate Judge:

      Plaintiff Michael G. Schwern filed this action against defendant Nóirín Plunkett on

January 27, 2014. According to Schwern's allegations, Plunkett falsely claimed that Schwern

sexually and physically assaulted her, both to law enforcement officials, prosecutors, and medical

personnel and to "other third parties." Arising out of Plunkett's alleged statements to "other third

parties," Schwern alleges Plunkett's liability for defamation, intentional infliction of emotional

distress, and intentional interference with prospective economic relations. This court has

jurisdiction over Schwern's action pursuant to 28 U.S.C. § 1332(a), based on the complete

diversity of the parties and the amount in controversy.

Page 1 - FINDINGS AND RECOMMENDATION

Now before the court is Plunkett's special motion (#4) to strike, brought under Or Rev. Stat. 31.150 *et seq.* (Oregon's "anti-SLAPP" statute), by and through which Plunkett seeks an order striking all of Schwern's claims against her and dismissal of Schwern's action without prejudice. I have considered the motion, oral argument on behalf of the parties, and all of the pleadings and papers on file. For the reasons set forth below, Plunkett's special motion should be denied.

## LEGAL STANDARD

"Or. Rev. Stat. §§ 31.150 - 31.155 comprise Oregon's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statutes. Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *In re Gardner*, 563 F.3d 981, 986 (9th Cir. 2009), *citing Verizon Delaware, Inc. v. Covad Comms. Co.*, 377 F.3d 1081, 1090 (9th Cir. 2004). The courts of the Ninth Circuit apply and enforce state anti-SLAPP statutes, *see United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-973 (9th Cir. 1999) (applying California's anti-SLAPP statute), including Oregon's anti-SLAPP scheme, *see Northon v. Rule*, 637 F.3d 937, 938-939 (9th Cir. 2011), *Englert v. MacDonell*, 551 F.3d 1099, 1101-1102 (9th Cir. 2009).

Or. Rev. Stat. 31.150 provides as follows:

(1)    A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. **The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim.** The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying

the motion.

(2)     **A special motion to strike may be made under this section against any claim in a civil action that arises out of:**

   (a)     Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

   (b)     **Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;**

   (c)     Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

   (d)     **Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.**

(3)     **A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court** shall deny the motion.

(4)     **In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.**

(5)     If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim:

   (a)     The fact that the determination has been made and the substance of the determination may not be admitted in evidence at any later stage of the case; and

Page 3 - FINDINGS AND RECOMMENDATION

(b)     The determination does not affect the burden of proof or standard
of proof that is applied in the proceeding.

Or. Rev. Stat. 31.150 (emphasis supplied).[1] Thus:

> Section 31.150 allows defendants to bring a special motion to strike a claim which
> shall be treated as a motion to dismiss under Or. R. Civ. P. 21 A and requires the
> court to enter a "judgment of dismissal without prejudice" if the motion is granted.
> **The court's consideration of a special motion to strike is a two-step process.**
> **First, the defendant has the initial burden to show that the challenged**
> **statement is within one of the categories of civil actions described in Or. Rev.**
> **Stat. § 31.150(2).  If the defendant meets the initial burden, "the burden**
> **shifts to the plaintiff in the action to establish that there is a probability that**
> **the plaintiff will prevail on the claim by presenting substantial evidence to**
> **support a prima facie case.  If the plaintiff meets this burden, the court shall**
> **deny the motion."** Or. Rev. Stat. § 31.150(3).

*In re Gardner*, 563 F.3d at 986 (emphasis supplied; footnote omitted).

In evaluating special motions to strike under Section 31.150, the Oregon courts consider

"the facts underlying plaintiffs' claims in the light most favorable to plaintiffs," *Neumann v. Liles*,

261 Or. App. 567, 570 n. 2 (2014), and do not weigh the evidence or make any determination of

the likelihood that plaintiffs will ultimately prevail, *see Young v. Davis*, 259 Or. App. 497, 508

(2013).  Each of the two steps of the process presents a question of law.  *See id.* at 572, *citing*

*Young*, 259 Or. App. at 507-510.  Section 31.150 is intended to create a "low bar" for plaintiffs to

overcome, and is intended only "to weed out meritless claims meant to harass or intimidate—not

to require that a plaintiff prove [hi]s case before being allowed to proceed further."  *Young*, 259

Or. App. at 508, *citing Staten v. Steel*, 222 Or. App. 17, 32 (2008) ("The purpose of the special

---

[1]  Oregon Civil Procedure Rule 21 A provides a procedural mechanism for motions to
dismiss, *see* Or. R. Civ. P. 21 A, while Oregon Civil Procedure Rule 21 F (which is expressly not
applicable to motions brought under Section 31.150, *see* Or. Rev. Stat. 31.150(1)) requires
motions to dismiss to be consolidated with other available motions against a plaintiff's complaint,
*see* Or. R. Civ. P. 21 F.

motion to strike procedure. . . is to expeditiously terminate *unfounded* claims that threaten

constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that

a claim is *meritorious*" (emphasis original)).  A plaintiff meets his burden under Section 31.150

by submitting evidence that, if credited, "would permit a reasonable factfinder" to rule in the

plaintiff's favor.  *Neumann*, 261 Or. App. at 575; *see also Young*, 259 Or. App. at 508 ("the

presentation of substantial evidence to support a *prima facie* case is, *in and of itself*, sufficient to

establish a probability that the plaintiff will prevail; whether or not it is 'likely' that the plaintiff

will prevail is irrelevant in determining whether it has met the burden of proof set forth by ORS

31.150(3)" (emphasis original)).  As necessarily follows from the foregoing, the fact that the

defendant may present substantial evidence to the contrary is likewise irrelevant to determining

whether the plaintiff has met his burden.  *See Young*, 259 Or. App. at 510.

  The Oregon courts "look to California case law [in construing Section 31.150 *et seq.*]

because Oregon's anti-SLAPP statute was 'modeled on California statutes' and '[i]t was intended

that California case law would inform Oregon courts regarding the application of ORS 31.150 to

ORS 31.155.'"  *Neumann*, 261 Or. App. at 573 n. 3, *quoting Page v. Parsons*, 249 Or. App. 445,

461 (2012).

## FACTUAL BACKGROUND[2]

I.  **The Parties**

  Schwern is a resident of Portland, Oregon, and a United States citizen.  He is an open-

---

  [2] Except where otherwise indicated, the following recitation constitutes my construal of
Schwern's allegations and the parties' evidentiary proffers in the light most favorable to Schwern,
in accordance with the legal standard governing special motions to strike under Or. Rev. Stat.
31.150 *et seq.*

source software developer, and is both active and prominent within the open-source software community.

Plunkett is a citizen of the United Kingdom permanently residing in the United States and currently residing in Cambridge, Massachusetts. Plunkett is likewise active within the open-source software community.

Schwern and Plunkett were married from November 12, 2011, until their divorce, which became final as of October 1, 2013.

## II.    History Underlying the Parties' Dispute

From November 2011 to November 2012, the parties lived together in Portland, Oregon, and were sexually intimate. Schwern alleges that their sexual intimacy "included various activities commonly referred to as BDSM (bondage, domination, and sadomasochism)," and that "the parties' BDSM activities were entirely consensual," Complaint, ¶ 7, and testifies to the truth of that allegation, *see* Declaration (#15) of Michael G. Schwern ("Scwern Decl."), ¶ 9.

According to Plunkett's testimony, in November 2012 Schwern sexually assaulted her and the parties thereafter began living separately. *See* Declaration of Nóirín Plunkett ("Plunkett Decl., ¶¶ 3-4. Plunkett testifies that they nevertheless "continued [thei]r relationship while living apart." *Id.*, ¶ 4. However, Plunkett testifies, Schwern continued to "engage in physically, sexually and emotionally abusive behavior toward [her], leading [her] to go to [her] doctor at one point in June of 2013, and eventually to seek a divorce." *Id.* Schwern offers his own contrary testimony that he "ha[s] never sexually assaulted" Plunkett, "ha[s] never engaged in any type of nonconsensual sexual contact" with her, and "ha[s] never physically or emotionally abused" her, but does not otherwise deny the particulars of Plunkett's testimony. Schwern Decl., ¶¶ 2-4.

Page 6 - FINDINGS AND RECOMMENDATION

The parties mutually filed divorce documents on September 19, 2013. Plunkett testifies

that they agreed to meet at her home after filing their divorce papers "for dinner." Plunkett Decl.,

¶ 5. According to the allegations of Schwern's complaint, the parties "planned to have a final

date together" after filing the papers, Complaint, ¶ 9, and Schwern testifies to the truth of that

allegation, Schwern Decl., ¶ 9. Plunkett testifies that after Schwern arrived at her residence that

evening, he forced her to perform oral sex on him, had sexual intercourse with her despite her

repeated verbal objections, choked her with his hands, and penetrated her vaginally with the

blade of a knife. Plunkett Decl., ¶ 5. According to the allegations of Schwern's complaint, "[t]he

parties talked and had sex [and] engaged in consensual BDSM activities as part of the sex,"

Complaint, ¶ 9, and Schwern testifies to the truth of that allegation, Schwern Decl., ¶ 9.

Plunkett testifies that after Schwern left her home on September 19, 2013, she "contacted

a friend who arranged for transport to the emergency room," that she contacted the police and

"underwent a sexual assault forensic examination," and that her "injuries were photographed."

Plunkett Decl., ¶ 5. Schwern was arrested, but was released on bail on September 20, 2013.

Plunkett left Oregon for Massachusetts the following day (two days earlier than had previously

been her plan).

Beginning almost immediately thereafter, accounts of the incident of September 19, 2013,

began to appear on the internet, characterizing the incident as one of sexual violence perpetrated

by Schwern on the person of his ex-wife. These accounts appear largely to have been posted by

organizations and individuals connected with the open-source software community, including in

particular organizations that had previously worked with Schwern. Certain of the accounts

expressly state that the organizations in question will no longer work with Schwern or continue

Page 7 - FINDINGS AND RECOMMENDATION

to "support" his work. Schwern alleges that Plunkett "intentionally made false and unprivileged claims" characterizing the parties' sexual activities of September 19, 2013, as rape in direct communications with the third parties who posted these accounts, Complaint, ¶ 13, and testifies that he subjectively believes that allegation to be true, *see* Schwern Decl., ¶ 10, but does not otherwise offer affirmative evidence that Plunkett actually did so. Plunkett offers no testimony or other evidence as to whether she communicated regarding the incident with any third party other than law enforcement, prosecutorial, or medical personnel, but notes, correctly, that the text of one of the posted accounts suggests that it was made in response to a press release issued by Schwern's own attorney, and that the information contained in the posts could have been gleaned from publicly available arrest reports.

Schwern further alleges that a former mutual friend of both parties, Talena Gandy, stopped speaking with him shortly after Plunkett moved to Cambridge, *see* Complaint. ¶ 21, and testifies both to the truth of that allegation and to his subjective belief that Gandy did so specifically because Plunkett told her Schwern had sexually assaulted her, Schwern Decl., ¶¶ 9-10. Schwern further offers the testimony of Casey West that "in the early fall of 2013" he "had a conversation" with Plunkett in which she told West that Schwern had raped her and vaginally penetrated her with a knife "in September 2013." Declaration of Casey West ("West Decl."), ¶¶ 3-4.

Schwern alleges that Plunkett was at all material times aware that Schwern "was contemplating applying for a salaried job" at the Mozilla Corporation, and that the president of the Stumptown Syndicate – an open source software organization that has posted a notice publicly disavowing its willingness to further associate with Schwern that Schwern believes may

have received information directly from Plunkett regarding the incident of September 19, 2013 – acts as a senior project manager for Mozilla. Complaint, ¶ 31. Schwern testifies to the truth of that allegation, and to his subjective belief that Plunkett communicated an inaccurate account of that incident to the Stumptown Syndicate executive with the intent to bias Mozilla against Schwern and to induce Mozilla to refuse to hire him. Schwern Decl., ¶¶ 9-10. Schwern further alleges that Plunkett's purported communications with the Stumptown Syndicate executive will tend to deprive him of significant economic opportunities and "has already caused [him] serious mental harm and severe emotional distress," Complaint, ¶ 32, and testifies to the truth of that allegation, *see* Schwern Decl., ¶ 9.

Plunkett remained in contact with police and prosecutors in Oregon, and a grand jury proceeding was scheduled to take place in Oregon at some time in October 2013 in connection with Schwern's conduct of September 19, 2013. On October 23, 2013, however, Plunkett advised the Oregon prosecutors that she did not intend to prosecute a criminal action against Schwern, and the grand jury proceeding was canceled.

Plunkett testifies that on November 12, 2013, she received an email message from Schwern which, while not ostensibly threatening or hostile, caused her to experience apprehension. Plunkett Decl., ¶ 8. Schwern testifies to the contrary, that he did not send Plunkett an email message on that date. Schwern Decl., ¶ 5. Relying in part on her sworn affidavit that she had received such an email, Plunkett sought a restraining order against Schwern in the Massachusetts courts on November 21, 2013, and received the requested order on December 12, 2013. *See* Plunkett Decl., ¶¶ 8-9, Exhs. 1-2.

Plunkett further testifies that on January 27, 2014 – the same day this action was filed in

Page 9 - FINDINGS AND RECOMMENDATION

this court – she received six white roses that had been ordered over the internet by a person identified only as "Michael S." *Id.*, ¶ 10. She interprets her receipt of the roses as a coded threat from Schwern. *See id.* Schwern testifies that he did not arrange for the delivery of the roses. Schwern Decl., ¶ 6.

## ANALYSIS

By and through her motion, Plunkett seeks an order striking all of Schwern's claims against her and dismissing Schwern's action without prejudice on the grounds that Schwern's claims fall within the scope of Oregon's anti-SLAPP statute (Or. Rev. Stat. 31.150 *et seq.*) and that Schwern's claims are so entirely lacking in merit and in evidentiary support that Schwern cannot establish any likelihood of ultimately prevailing in connection with any of the three asserted causes of action. Schwern opposes Plunkett's motion, arguing that this court may not properly apply or enforce the procedural mechanisms of Oregon's anti-SLAPP statute, that in any event his claims do not fall within the scope of the statute, and, in the alternative, that his evidentiary proffer is sufficient for his claims to survive a Section 31.150 challenge. I address all of the parties' arguments below.

## I.    Enforceability of Oregon's Anti-SLAPP Statute in this Court

As noted above, notwithstanding Schwern's strenuous contention to the contrary, the courts of the Ninth Circuit generally apply and enforce state anti-SLAPP statutes, *see Newsham*, 190 F.3d at 972-973, including in particular Oregon's anti-SLAPP scheme, *see Northon*, 637 F.3d at 938-939, *Englert*, 551 F.3d at 1101-1102. In support of his position, Schwern points to the concurrence of Chief Judge Kozinski in *Makaeff v. Trump Univ., LLC* [("*Makaeff I*")], 715 F.3d 254, 272-275 (9th Cir. 2013) (Kozinski, C.J., concurring), in which Judge Kozinski opined that

*Newsham*, 190 F.3d 963, was wrongly decided, in that anti-SLAPP statutes are "quintessentially procedural" rather than substantive, "state procedural rules have no application in federal court, no matter how little they interfere with the Federal Rules," and "[f]ederal courts have no business applying exotic state procedural rules," and on that basis called for rehearing *en banc* of *Makaeff I* for the purpose of reconsidering *Newsham*. *Makaeff I*, 715 F.3d at 272, 273, 275 (Kozinski, C.J., concurring); *see also id.* at 275-756 (Paez, J., concurring) (agreeing that *Newsham* merited reconsideration). Schwern also argues that Oregon's anti-SLAPP statute differs from California's analog thereof in that Oregon's statutory scheme expressly states that "ORS 31.150 and 31.152 create a procedure for seeking dismissal of claims described in ORS 31.150 (2) and do not affect the substantive law governing those claims," Or. Rev. Stat. 31.155(2), and contends, like Judge Kozinski in *Makaeff I*, that Oregon procedural rules cannot govern proceedings in this court.

There are two significant flaws in Schwern's argument. First, while Section 31.155(2) uncontroversially acknowledges that Oregon's anti-SLAPP statute creates a procedural mechanism for seeking early dismissal of certain claims, and clarifies that the statute's provisions do not modify the substantive law governing such claims, the section neither asserts nor suggests that the anti-SLAPP scheme itself entirely lacks any substantive component, aspect, or force. On comparative analysis of the two statutory schemes, I do not find that Section 31.155(2) creates any meaningful distinction between the anti-SLAPP statutes of Oregon and California.

Second, the judges of the Ninth Circuit expressly declined to hear *Makaeff I en banc* or to reconsider the operative holding of *Newsham*, with the necessary consequence that *Newsham* and its progeny continue to state the law of the circuit. *See Makaeff v. Trump Univ., LLC* [("*Makaeff II*")], 736 F.3d 1180 (9th Cir. 2013) (denying rehearing *en banc*). Moreover, the *Makaeff II* court

expressly recognized that anti-SLAPP statutes "confer substantive rights" in addition to creating

a procedural mechanism, *id.* at 1184, *see also id.* at 1182, 1184 n. 3, 1187, 1187 n. 8, and

expressly affirmed the reasoning of the court's previous opinions that, in the absence of any

conflict between the provisions of a state anti-SLAPP statute and any federal rule, the courts of

the Ninth Circuit should enforce the procedural mechanisms created by the state statutory scheme

in order to give full effect to its substantive purpose of providing enhanced procedural

protections to defendants named as parties due to their engagement in protected speech acts, *see*

*id.* at 1184, 1187.

      Schwern's arguments provide no grounds for concluding that this court should break from

the consistent body of Ninth Circuit decisions finding state anti-SLAPP statutes enforceable in

federal court.  In consequence, the court should consider Plunkett's motion on its stated terms,

without first construing it as a motion expressly recognized under the Federal Rules of Civil

Procedure.

## II.    Defendant's Burden at the First Step of the Two-Step Process

      As noted above, at the first step of the two-step Section 31.150(3) process it is Plunkett's

burden to make a *prima facie* showing that each of Schwern's claims arises out of a statement,

document, or conduct meeting one or more of the following descriptions:

    (a)    Any oral statement made, or written statement or other document
          submitted, in a legislative, executive or judicial proceeding or other
          proceeding authorized by law;

    (b)    Any oral statement made, or written statement or other document
          submitted, in connection with an issue under consideration or review by a
          legislative, executive or judicial body or other proceeding authorized by
          law;

(c)     Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

(d)     Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Or. Rev. Stat. 31.150(2).

It is uncontested that each of Schwern's claims arises in material part out of statements purportedly made by Plunkett to some or all of the third parties who responded in public fora to the incident of September 19, 2013, as discussed above.  The parties vigorously dispute, however, whether claims arising out of those purported statements, if made by Plunkett, would fall within any of the four Section 31.150(2) categories.

As a preliminary matter, I agree with Schwern that his claims are not prototypically of the kind Oregon's anti-SLAPP statute was enacted to address, in that his claims do not appear in any way to be calculated to chill any ongoing or future exercise of Plunkett's constitutionally protected speech rights.  However, I additionally agree with Plunkett that the plain language of Section 31.150(2) indicates a legislative intent not to limit application of the special motion to strike procedure to any narrow set of circumstances, but rather to capture a broad range of claims arising both directly and indirectly out of acts of free and/or privileged speech.  *See, e.g., Horton v. Western Protector Ins. Co.*, 217 Or. App. 443, 448 n. 2 (2008) (noting the broad scope of the language and disjunctive structure of Section 31.150(2), and suggesting that the provision would in that respect be inconsistent with a legislative intent to limit the application of the special motion to strike procedure narrowly).  Moreover, it seems clear that any overly limited construction of the scope of Section 31.150(2) would tend directly to frustrate the purpose of the

Page 13 - FINDINGS AND RECOMMENDATION

statutory scheme by systematically failing to provide the intended procedural and substantive

protections to all victims of meritless lawsuits calculated to chill protected speech conduct,

whereas the risk of prejudicing plaintiffs through overly broad construction of the provision is

effectively mitigated at the second step of the two-step process, at which only entirely baseless

claims are stricken, and consequent dismissal is without prejudice.  The broad construction

Plunkett urges the court to adopt would therefore both be consistent with the decisions of the

Oregon courts, *see, e.g.*, *Neumann*, 261 Or. App. at 574-575, and further the public policy the

statutory scheme was enacted to advance, *see Horton*, 217 Or. App. at 451-452 (discussing

legislative history of Oregon's anti-SLAPP statute).

        As noted above, and as confirmed by analysis of Schwern's complaint, each of Schwern's

claims depends necessarily on the proposition that Plunkett made oral or written statements

regarding the incident of September 19, 2013, to the persons and organizations that subsequently

published public responses to the internet and other social media as described in Schwern's

complaint, such statements specifically characterizing Schwern's conduct on that occasion as

constituting nonconsensual sexual and physical assault.  The timing of the internet and social

media postings suggests that some or all of the statements by Plunkett, if made, were made either

during the period when prosecutors were considering Plunkett's charges against Schwern in

Oregon or during the period when the Massachusetts courts were considering Plunkett's

allegations and evidence in support of her request for a restraining order.  To the extent that

Plunkett's putative statements were made during either of these periods, claims arising out of

them fall within the scope of Section 31.150(2)(b), in that the statements were made to that

extent "in connection with" an issue "under review" by a judicial body or other authorized

Page 14 - FINDINGS AND RECOMMENDATION

proceeding.

Even if some or all of the statements were made outside those two time periods, it appears likely that the Oregon courts would treat claims arising out of them as within the scope of Section 31.150(2)(d), in that the statements constituted speech conduct in connection with an issue "of public interest." *See, e.g., Young*, 259 Or. App. at 505 (declining to analyze a plaintiff's argument that claims arising out of his statements were not within the scope of Section 31.150(2) because his statements were made as part of a private dispute between co-workers rather than statements on an issue of public interest, because that argument was not sufficiently "focused" to trigger appellate review of the issue); *see also Gilbert v. Sykes*, 147 Cal. App. 4th 13, 23 (2007) (finding that the "public interest requirement" of California's anti-SLAPP statute must be "'construed broadly' so as to encourage participation by all segments of our society in vigorous public debate related to issues of public interest" and to avoid "judicial decisions . . . construing that element of the statute too narrowly;" applying statute to statements made on the subject of plastic surgery (citations omitted)) (cited with approval by *Neumann*, 261 Or. App. at 575 n. 5).

For all of the foregoing reasons, the court should find for purposes of deciding Plunkett's special motion to strike that Plunkett has met her burden at the first step of the two-step process to establish on a *prima facie* basis that Schwern's claims are within the scope of Oregon's anti-SLAPP statute, thereby shifting the burden to Schwern to demonstrate "a probability" that he will prevail on each of his claims through the presentation of substantial evidence.

### III.    Plunkett's Evidentiary Objections

Plunkett objects on multiple grounds to portions of Schwern's evidentiary proffer in support of his burden at the second step of the two-step process. First, in the minutes before oral

Page 15 - FINDINGS AND RECOMMENDATION

argument in connection with Plunkett's special motion to strike – and one week after Plunkett filed her reply in support of her special motion – Schwern filed the declaration of third-party Casey West in support of his opposition to Plunkett's motion. West declares that "in the early fall of 2013" he "had a conversation" with Plunkett in which she told him[3] that Schwern had raped her and vaginally penetrated her with a knife "in September 2013." West Decl., ¶¶ 3-4. Plunkett objects to this evidence as untimely and improperly offered.

I agree with Plunkett that Schwern's proffer of West's testimony is untimely. However, because dismissal under Section 31.150 is necessarily without prejudice, no legitimate purpose could be served by declining to consider otherwise competent evidence on grounds of untimeliness, and considerations of judicial economy weigh heavily in favor of admitting all proffered evidence *nunc pro tunc* in the interest of deciding the issues raised by Plunkett's special motion definitively and expeditiously. I therefore recommend that the court consider West's declaration.

Second, on March 30, 2014 – ten days after Schwern filed his opposition to Plunkett's special motion – Schwern filed the declaration of his counsel, Bear Wilner-Nugent, testifying to the authenticity of the social media postings previously filed in support of Schwern's opposition on March 20, 2014. Plunkett objects to the Wilner-Nugent declaration on grounds of untimeliness, and to the proffer of the social media postings as unauthenticated. For the same reasons discussed above in connection with the West declaration, the court should deem the

---

[3] West is not a person who subsequently posted an account of or response to the incident of September 19, 2013, thereby allegedly inflicting injury on Schwern. West's testimony standing alone is therefore not sufficient, in the absence of any affirmative inference drawn therefrom, to establish a probability that Schwern will prove his contention that Plunkett made similar statements to the other third parties whose social media responses are at issue here.

Page 16 - FINDINGS AND RECOMMENDATION

Wilner-Nugent declaration timely filed, and treat the evidence of social media postings as authenticated for purposes of Plunkett's special motion.

Third, Plunkett objects to Schwern's reliance on testimony regarding his subjective belief in the truth of certain allegations in support of his claims and/or of certain conclusory or speculative allegations. I agree with Plunkett that Schwern's subjective belief in the truth of such allegations does not constitute substantial evidence in support of any element of any of Schwern's claims. I have not relied upon any such testimony in preparation of these Findings and Recommendations, other than for purposes of setting out the procedural history of this action, and describing the parties' adopted positions.

Fourth and finally, Plunkett objects to Schwern's evidentiary proffer to the extent it constitutes or incorporates by reference from Schwern's complaint inadmissible hearsay. I agree with Plunkett that hearsay is inadmissible in connection with Schwern's burden at the second step of the two-step process, and further agree that Schwern has offered hearsay as a material portion of his evidentiary proffer. *See* Complaint, ¶ 22. I have disregarded all inadmissible hearsay proffered by Schwern in support of his opposition to Plunkett's special motion, and the court likewise should disregard all inadmissible hearsay in preparing its order.

## IV.    Plaintiff's Burden at the Second Step of the Two-Step Process

As noted above, it is Schwern's burden to establish through the presentation of substantial evidence that there is "a probability" on a *prima facie* basis that he will ultimately prevail as to each of his claims. Also as noted above, in determining whether Schwern has met his burden, the court is required to interpret the parties' respective evidentiary proffers in the light most favorable to Schwern. That standard requires the court to draw all reasonable inferences from the

admissible evidence of record in Schwern's favor for purposes of the motion now before the

court. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged"). Only claims that entirely lack merit

under that forgiving standard are to be stricken at the second step of the two-step process. *See*

Or. Rev. Stat. 31.150(3).

Plunkett's statements to "other third parties" as detailed in Schwern's complaint constitute

a necessary element of each one of Schwern's claims. That is, although the making of a

defamatory statement is an expressly required element only of Schwern's defamation claim, *see*

*Nat'l Union Fire Ins. Co. v. Starplex Corp.*, 220 Or. App. 560, 584 (2008), and not of Schwern's

intentional infliction of emotional distress claim, *see Schiele v. Montes*, 231 Or. App. 43, 48

(2009), or intentional interference with economic relations claim, *see Northwest Natural Gas Co.*

*v. Chase Gardens, Inc.*, 328 Or. 487, 498 (1999), analysis of Schwern's complaint establishes

that he has pled intentional infliction of emotional distress and intentional interference with

economic relations specifically by and through the making of defamatory statements about him.

Two material factual questions regarding Plunkett's purported statements to third parties are

therefore (as discussed in more detail below) a common element of each of Schwern's claims.

To the extent Plunkett's purported statements to third parties (if made) were true, they

lack the defamatory character necessary to support a claim of defamation, *see, e.g., Bahr v.*

*Ettinger*, 88 Or. App. 419, 422 (1987), the outrageously transgressive character necessary to

support a claim of intentional infliction of emotional distress, *see Schiele*, 231 Or. App. at 48,

and the improper character necessary to support a claim of intentional interference with

Page 18 - FINDINGS AND RECOMMENDATION

economic relations, *see  Northwest Natural*, 328 Or. at 498.  Each of Schwern's claims therefore

necessarily depends on the falsehood of Plunkett's purported statements to third parties.  In

connection with this material question of fact, Schwern has offered his own competent

declaration testimony that he did not sexually or otherwise assault Plunkett.  Under the applicable

standard of review, this court must accept that testimony as true, without weighing it against

Plunkett's contrary testimony or against the implicit credit the Massachusetts court gave

Plunkett's contrary testimony in issuing its restraining order against Schwern.  For purposes of

determining whether Schwern has met his burden at the second step of the two-step process

(only), the court must therefore assume that Plunkett's statements to third parties characterizing

the incident of September 19, 2013 as nonconsensual sexual and physical assault, if made, were

false.

        The second material factual question regarding Plunkett's purported statements to third

parties is whether or not Plunkett actually made any such statements.  Schwern offers no

competent evidence that she affirmatively did so.  However, Schwern offers evidence tending to

establish that between September 21 and September 25, 2013 – within two to six days after the

incident of September 19, 2013, occurred – several different persons and organizations he had

worked with in the open source software community had published social media postings

condemning his conduct and/or repudiating further support for him or for his work.  Interpreting

this evidence in the light most favorable to Schwern, it is a fair inference therefrom (for purposes

of Plunkett's special motion only) that at least some of the third parties publishing such posts

received their information regarding the incident directly from Plunkett (one such post references

a press release issued by Schwern's counsel as a source of primary information, but that release

Page 19 - FINDINGS AND RECOMMENDATION

issued September 24, 2013, after several of the other posts had already been published), if only

due to the manifest improbability that members of the general public would otherwise have

learned about the incident (and adopted Plunkett's perspective as to what had occurred) directly

from publicly available arrest records within fewer than 48 hours following the arrest. I therefore

recommend that the court presume the truth of the inference, for purposes of determining

whether Schwern has met his burden at the second step of the two-step process only, that

Plunkett made unprivileged defamatory statements to third parties regarding Schwern's conduct

of September 19, 2013, as alleged in Schwern's complaint.

Having so construed the evidence bearing on factual issues common to all of Schwern's

claims, I turn now to analysis of the sufficiency of Schwern's evidentiary proffer to support all

elements of each claim, in turn.

### A.    Plaintiff's Evidentiary Proffer as to his Defamation Claim

Under Oregon law, "[t]he elements of a claim for defamation are: (1) the making of a

defamatory statement; (2) publication of the defamatory material; and (3) a resulting special

harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special

harm." *Nat'l Union*, 220 Or. App. at 584, *citing L & D of Or. v. Am. States Ins. Co.*, 171 Or.

App. 17, 22 (2000). "A defamatory statement is one that would subject another to hatred,

contempt or ridicule or tend to diminish the esteem, respect, goodwill or confidence in which the

other is held or to excite adverse, derogatory or unpleasant feelings or opinions against the

other." *Id.* (internal modifications omitted), *quoting Marleau v. Truck Ins. Exch.*, 333 Or. 82, 94

(2001). "The inability to obtain employment that the plaintiff would have obtained but for the

currency of the slander constitutes special harm." *Id.* at 585, *citing Benassi v. Georgia-Pacific*,

Page 20 - FINDINGS AND RECOMMENDATION

62 Or. App. 698, 705 (1983). Moreover, a false accusation that the plaintiff committed a crime is

similarly defamatory *per se*. *See Muresan v. Philadelphia Romanian Pentecostal Church*, 154

Or. App. 465, 473-474 (1998).

On the evidentiary construction discussed above, the court must presume for purposes of

analyzing Plunkett's special motion that Plunkett made false statements accusing Schwern of the

crimes of rape, sexual assault, and assault with a deadly weapon to third parties. On that

presumption, Schwern's evidentiary proffer is sufficient on a *prima facie* basis to satisfy the first

two enumerated elements of a defamation claim. Because false accusation of criminal conduct is

*per se* defamatory, Schwern need not satisfy the third and final enumerated element. Schwern

having offered substantial evidence sufficient to establish a *prima facie* probability that he will

prevail on his defamation claim, the court should deny Plunkett's motion as to Schwern's first

cause of action.

**B.      Plaintiff's Evidentiary Proffer as to his Intentional Infliction Claim**

Under Oregon law, "[t]o prevail on an [intentional infliction of emotional distress] claim,

a plaintiff must prove that (1) the defendant intended to inflict severe emotional distress on the

plaintiff, (2) the defendant's actions caused the plaintiff severe emotional distress, and (3) the

defendant's actions transgressed the bounds of socially tolerable conduct." *Schiele*, 231 Or. App.

at 48, *citing McGanty v. Staudenraus*, 321 Or. 532, 543 (1995). A plaintiff can satisfy the first

enumerated element by showing that the defendant "kn[e]w that [severe emotional] distress [wa]s

certain, or substantially certain, to result from h[er] conduct." *McGanty*, 321 Or. at 550

(emphasis omitted).

Schwern offers competent evidence that Plunkett made statements to West characterizing

Schwern's conduct of September 19, 2013, as rape, and at this stage of these proceeding the court is required to credit Schwern's testimony that Plunkett's statements to West were false. Schwern further offers competent evidence that shortly after Plunkett moved to Massachusetts in September 2013, the parties' former mutual friend Talena Gandy stopped speaking to him. It is reasonable to infer from this evidence, viewed in the light most favorable to Schwern, that Plunkett communicated discreditable information regarding Schwern to Gandy during the intervening period. In addition, on the evidentiary construction discussed above, the court must presume for purposes of analyzing Plunkett's special motion that Plunkett made false statements accusing Schwern of heinous criminal acts to members of Schwern's professional community. Taken together, this corpus of affirmative and constructive evidence is sufficient on a *prima facie* basis to satisfy the third enumerated element of an intentional infliction claim, namely that the defendant's actions "transgressed the bounds of socially tolerable conduct."

As noted above, Schwern has offered his own declaration testimony that he did in fact suffer severe emotional distress from the social media postings produced in support of his opposition to Plunkett's motion. This testimony is sufficient on a *prima facie* basis to satisfy the second enumerated element of an intentional infliction claim.

Schwern has offered no affirmative evidence as to the first enumerated element of his claim, that the defendant "intended [through her complained-of actions] to inflict severe emotional distress on the plaintiff." However, viewing the evidence in the light most favorable to Schwern, and mindful that evidence of a defendant's intent is rarely easily available to a plaintiff at any stage of a legal proceeding, let alone prior to the conduct of discovery, it is reasonable to infer from the presumed falseness of Plunkett's presumptive statements and from

the identities of the persons to whom the statements were presumptively made that the statements were made either with the intent to inflict emotional distress on Schwern or with the knowledge that they were substantially certain to cause such distress. On that inference, Schwern's evidentiary proffer is sufficient on a *prima facie* basis to satisfy the intent element of his intentional infliction claim.

Schwern having offered substantial evidence sufficient to establish a *prima facie* probability that he will prevail on his claim of intentional infliction of emotional distress, the court should deny Plunkett's motion as to Schwern's second cause of action.

### C.    Plaintiff's Evidentiary Proffer as to his Intentional Interference Claim

Under Oregon law:

> To state a claim for intentional interference with economic relations, a plaintiff must allege: (1) the existence of a professional or business relationship; (2) intentional interference with that relationship; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and damage to the economic relations; and (6) damages.

*Northwest Natural*, 328 Or. at 498, *citing McGanty*, 321 Or. at 535.

The requisite " professional or business relationship" may be purely prospective in nature. *See Cron v. Zimmer*, 255 Or. App. 114, 125 (2013), *quoting McGanty*, 321 Or. at 535. "Generally, commercial and contractual relationships enjoy the protection of the tort." *Id.*, *citing Allen v. Hall*, 328 Or. 276, 281 (1999). "However, a defendant can be liable for interference 'even though the arrangement interfered with does not rise to the dignity of a contract.'" *Id.*, *quoting Luisi v. Bank of Commerce*, 252 Or. 271, 275 (1969).

Moreover, "[d]eliberate interference alone does not give rise to tort liability." *Id.*; *see*

*also Top Service Body Shop v. Allstate Ins. Co.*, 283 Or. 201, 209-10 (1973) ("[A] claim [of tort liability for intentional interference with a contractual or other economic relations] is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself. Defendant's liability may arise from improper motives or from the use of improper means. They may be wrongful by reason of a statute or other regulation, or a recognized rule of common law, or perhaps an established standard of a trade or profession.").

The *Northwest Natural Gas* court specified that:

> To be entitled to reach a jury, a plaintiff must not only prove that defendant intentionally interfered with h[er] business relationship but also that defendant had a duty of non-interference; *i.e.*, that [it] interfered for an improper purpose rather than for a legitimate one, or that defendant used improper means which resulted in injury to plaintiff. Therefore, a case is made out which entitles plaintiff to go to a jury only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself.

*Northwest Natural Gas*, 328 Or. at 498 (citations, internal quotation marks omitted).

Schwern has offered competent evidence from which a trier of fact could reasonably conclude that he had an ongoing and prospective relationship with the Stumptown Syndicate, the producer of the Open Source Bridge conference at which Schwern has in the past been a regular and frequent presenter, and that Schwern's association with the conference has been a source of "numerous professional networking and economic opportunities" for him. Schwern has similarly offered competent evidence from which a trier of fact could reasonably conclude that he had an ongoing and prospective relationship with O'Reilly Media which similarly served as a source of "professional, economic, and personal opportunities" for him. In addition, Schwern has offered competent evidence that he was at material times contemplating seeking employment with the Mozilla Corporation, and that at all material times Plunkett was aware of his interest in such

employment. This evidentiary proffer is sufficient on a *prima facie* basis to satisfy the first element of Schwern's intentional interference claim, the existence of an existing or prospective economic relationship.

On the evidentiary construction discussed above, the court must presume for purposes of analyzing Plunkett's special motion that Plunkett made false statements accusing Schwern of a heinous crime to representatives of the Stumptown Syndicate, O'Reilly Associates, and the Mozilla Corporation. On that construction, Schwern's evidentiary proffer is sufficient on a *prima facie* basis to establish a probability that Plunkett interfered with Schwern's economic relationships by improper means.

Schwern has offered no affirmative evidence that such interference was intentional. However, viewing the evidence in the light most favorable to Schwern, and once again mindful of the inherent difficulty in proving intent, it is reasonable to infer from the presumed falseness of Plunkett's presumptive statements and from the identities of the persons to whom the statements were presumptively made that the statements were made with intent to poison Schwern's economic prospects. Schwern's evidentiary proffer is therefore sufficient on a *prima facie* basis to satisfy the intent element of the claim.

Schwern has offered his own declaration testimony that Plunkett's statements, if made, have caused him to suffer damages in the form of reduced economic prospects. This evidentiary proffer is sufficient on a *prima facie* basis to satisfy the causation and damages elements of the claim.

Schwern having offered substantial evidence sufficient to establish a *prima facie* probability that he will prevail on his claim of intentional interference with economic relations,

Page 25 - FINDINGS AND RECOMMENDATION

the court should deny Plunkett's motion as to Schwern's third cause of action.

**V.      Recommended Disposition of Plunkett's Special Motion**

For all of the reasons set forth above, the court should deny Plunkett's motion in its entirety. Such recommended disposition should not be interpreted to suggest that Schwern is more likely than not to prevail in connection with any of his claims, but only that, under the forgiving evidentiary standard governing Oregon's anti-SLAPP statute, his claims have not been clearly shown to lack any colorable basis.

In the alternative, however, in the event that the reviewing judge disagrees with my finding that the court should draw the reasonable inference in Schwern's favor that Plunkett actually made the purported statements to third-party members of Schwern's professional community, the court could appropriately order the automatic stay of discovery lifted for the limited purpose of permitting Schwern to seek discovery relating to whether Plunkett made defamatory statements to those parties (such discovery to include Plunkett's limited deposition), and to defer decision on Plunkett's special motion pending completion of such discovery. To the extent the reviewing court declines to draw the indicated inference, I so recommend. However, because I find under the applicable legal standard that at this stage of these proceedings the indicated inference should be drawn in Schwern's favor, my primary recommendation is, as noted above, that the special motion be denied.

## CONCLUSION

For the reasons set forth above, Plunkett's special motion (#4) to strike should be denied. The automatic stay of discovery in this action should, in consequence, be lifted.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 22nd day of April, 2014.

Honorable Paul Papak
United States Magistrate Judge

Page 27 - FINDINGS AND RECOMMENDATION