1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF OREGON

3                           PORTLAND DIVISION

4
    MICHAEL G. SCHWERN,              )
5                                    )
                      Plaintiff,  )Case No. 3:14-cv-00146-PK
6                                    )
                 v.                  )
7                                    )
    NOÍRÍN PLUNKETT,                 )    April 9, 2014
8                                    )
                      Defendant.  )  Portland, Oregon
9   _____)

10

11

12

13                          ORAL ARGUMENT

14                    TRANSCRIPT OF PROCEEDINGS

15              BEFORE THE HONORABLE PAUL PAPAK

16       UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

1                              APPEARANCES

2   FOR THE PLAINTIFF:      BEAR WILNER-NUGENT
                            Counselor & Attorney at Law LLC
3                           620 SW 5th Avenue
                            Suite 1008
4                           Portland, OR 97204

5   FOR THE DEFENDANT:      ERIN K. OLSON
                            Law Office of Erin Olson PC
6                           2014 NE Broadway Street
                            Portland, OR 97232

7


8

    TRANSCRIBER/COURT REPORTER:
9   Jill L. Erwin, CSR, RMR, RDR, CRR
    Certified Shorthand Reporter
10  Registered Merit Reporter
    Registered Diplomate Reporter
11  Certified Realtime Reporter

12  United States District Courthouse
    1000 SW Third Avenue, Room 301
13  Portland, OR 97204
    503)326-8191

14

15                                   *   *   *

16

17

18

19

20

21

22

23

24

25

TRANSCRIPT OF PROCEEDINGS

1

2          THE COURT:  Good morning, Counsel.

3          MS. OLSON:  Good morning, Your Honor.

4          MR. WILNER-NUGENT:  Good morning.

5          THE COURT:  Sorry for the delay.  We were hoping

6  to get a court reporter, but I think magistrate judges get

7  the second bite at the apple and court reporters are up in

8  Judge Mosman's courtroom, so I thought we would be timely

9  and get going.

10     I've had a chance to review the record and all the

11  briefing, including the declaration filed this morning by

12  plaintiff, the declaration of Casey West.

13     Have you received that, Ms. Olson?

14          MS. OLSON:  I did, Your Honor.  I received it when

15  I came into the courtroom this morning.

16          THE COURT:  All right.  I don't need to hear

17  argument about whether the district court should consider

18  motions under anti-SLAPP statutes.  I'm pretty well

19  convinced that the Ninth Circuit has instructed me that we

20  should, so I'm going to go forward and hear and resolve this

21  motion.

22     And the way I propose doing it is since there's a

23  two-step sort of shifting burden process, I thought,

24  Ms. Olson, you could begin and talk to me about why it is

25  you believe the challenged statements fall within one of the

1   categories described in the anti-SLAPP statute.

2       And then, Mr. Wilner, you can respond and at the same

3   time make your argument as to why you think there's a

4   probability, even if the statements do fit, that the

5   plaintiff will prevail on his claims.

6       And then, Ms. Olson, you can reply and conclude the

7   argument.

8       So if that works, let's start with the question of the

9   statements themselves.  We're not dealing with the

10  statements that were made to law enforcement and authority.

11  The argument is that there were statements made to third

12  parties that formed the basis for plaintiff's claims here.

13          MS. OLSON:  That's correct, Your Honor.  And the

14  statements to the third parties were made to unidentified

15  third parties, those who purportedly reported to the social

16  media websites, and then a statement made to Casey West, and

17  I think the place to start is with defendant's objections to

18  the evidence of the -- as it has been submitted.

19      The timely filed evidence was only that in the

20  declaration of the plaintiff, and that evidence was minimal

21  at -- minimal in the sense that it only included what

22  the -- what the plaintiff actually knew firsthand.

23  Everything -- a lot of it was on information and belief, and

24  I'm not going to belabor my objections to what he

25  incorporated by reference to the complaint.

1    I'm going to talk about the declaration of Casey West

2    filed this morning, as well as whether, even without that

3    declaration, Casey West's statements are admissible, because

4    I think that they are the only shot that he has of defeating

5    this motion.

6    The declaration that Casey West told Mr. Schwern that

7    the statements had been made is inadmissible hearsay.  The

8    statement that is alleged is attributed to my client is not

9    hearsay, because it's not offered for the truth, but the

10   statement that she told Casey West is offered for its truth.

11   It's offered from the perspective of Casey West saying "she

12   told me this," and the declaration that Mr. Schwern filed

13   that says, "Casey West told me that Ms. Plunkett told him --

14   or her -- the following," that is hearsay, because it's

15   offered for the truth and --

16           THE COURT:  Wait a second.  I'm confused.  Are you

17   talking now about the Casey West declaration filed today?

18           MS. OLSON:  I am not.  I'm talking about

19   Mr. Schwern's incorporation of Casey West's statements.

20           THE COURT:  His previous.  And you -- let's talk

21   about the Casey West declaration itself.

22           MS. OLSON:  Okay.

23           THE COURT:  Because obviously it's intended to get

24   around that problem.

25           MS. OLSON:  It is.

1    THE COURT:  And your view is because it's filed

2    this morning it's -- it shouldn't be considered?  It's --

3    MS. OLSON:  My view is that it's untimely,

4    and -- and it goes back to the purpose of an anti-SLAPP

5    motion and why it exists.  If a -- a plaintiff does not have

6    the statements that are alleged to be defamatory in this

7    context, that is where the statements are arguably within

8    the protection of the constitutional rights of petition and

9    free speech, the plaintiff must have those statements when

10   he files the lawsuit.  I mean, that's the purpose of the

11   anti-SLAPP motion.  And allowing piecemeal additions to the

12   evidentiary record I think prejudices the defendant in this

13   case, and it also defeats the purpose of the anti-SLAPP

14   motion.

15   THE COURT:  Let me ask you about that.  It seems

16   to me, arguably, at least, that the plaintiff has what he

17   alleges are the defamatory statements.  Those are the ones

18   published on the websites, et cetera, not directly by the

19   defendant, but that it -- it's what we don't have, or didn't

20   have perhaps until now, was any clear connection, stronger

21   inference, between the statements that were published on

22   the -- on the various Internet sites and those made directly

23   by Ms. Plunkett.  And that's what I understand, in part,

24   Mr. West's statement is about.  This suggests she's telling

25   third parties about these allegations, which plaintiff

1   claims are untrue and defamatory, and that through whatever

2   inference you want to lead, they -- they find their way on a

3   number of websites that impact Mr. -- Mr. Schwern's

4   reputation and employability, et cetera.

5        And so that's my first comment.  And then my second,

6   sort of, question connected with that is:  While I agree

7   with you that anti-SLAPP statutes are an attempt to stop

8   frivolous lawsuits that inhibit free speech rights quickly,

9   the provisions of the statute include language that say on

10  motion and good cause shown there may be specific discovery

11  conducted, notwithstanding the motion, suggesting there may

12  be cases where good faith allegations are made, and

13  plaintiff simply needs some time to do a bit of discovery to

14  see if -- if -- if there's enough there to make a

15  meritorious claim and move forward, which I think is what

16  this is all about.

17       It's not clear to me that Ms. Plunkett is saying I

18  didn't make the statements to third parties.  She simply

19  more argues there's no evidence that I did.  And that's kind

20  of the moving question in all of this is who said what to

21  whom and what impact does this have in the analysis of these

22  claims.

23            MS. OLSON:  Let me start with the inference that I

24  think the Court is tempted to draw from the declaration.

25  The untimely filed declaration of Casey West.  That is that

1   somehow that authenticates the statements on the website.

2       If the Court looks at these statements on -- on the

3   website, the only reference you see to sources are

4   references to the plaintiff and his attorney.  There are no

5   references to -- attributing those statements to my client,

6   so I don't think it's a fair inference that Casey West's

7   declaration does anything with respect to those social media

8   websites.

9       The only thing Casey West's declaration would do, if

10  admitted, would be to establish that my client told

11  him -- told him or her -- I'm not even sure what gender

12  Casey West is -- that plaintiff had raped her.  There

13  is -- there are timing questions.  The early fall of 2013 is

14  not particularly helpful, but I think it's fair to assume

15  that this was made after the plaintiff had been arrested.

16  And if that's the case, then that gives me an argument that

17  the statement wasn't made in connection with a judicial

18  proceeding.  The proceeding being the presentation of

19  evidence to a grand jury and/or the inclusion of the

20  statement in a restraining order proceeding that's pending

21  in a Massachusetts court.

22      So if the Court reaches the declaration of

23  Casey West -- and, just to be clear, I do object to the

24  declaration of Casey West being received -- I think that

25  it's untimely.  But, more than that, there are procedures in

1  place to seek discovery.  There are procedures in place to

2  file late evidence in support of a motion.  None of those

3  procedures have been attempted, and I submit that at this

4  juncture it's simply too late and, again, defeats the

5  purpose of this motion.

6      But with respect to the statements of Casey West, if

7  the Court is going to consider them, the protections of

8  31.150 don't just include speech that is absolutely

9  privileged under the First Amendment or the right of

10  petition.  It includes any statement that is identified

11  within 31.152.  And those are statements not just made in a

12  judicial proceeding, but they are statements made in

13  connection with a judicial proceeding.  And they are also

14  statements made in public places or places open to the

15  public about an issue of public interest.

16      And I argued and I'm not going to belabor the argument

17  that I made in my reply that this subject is an issue of

18  public interest, at least public interest in the context of

19  their community, which case law tells us includes cat

20  breeding communities.  If it includes cat breeding

21  communities, then I submit that it includes open-source

22  software communities.  Whatever what means.

23      So there are at least three different bases on which

24  the Casey West's statement, if made and if considered, would

25  be -- would be within the protections of 31.152 (b), (c),

1    and (d).  And so I -- you know, with that said, I -- the

2    other statements -- if the Court is going to consider the

3    statements on a social media website, those are statements

4    made in a -- in a place open to the public or a public

5    forum, if the Court is going to consider the authenticating

6    the belated declaration of Mr. Wilner-Nugent, and those are

7    with an issue of public interest, we've already -- I've

8    already talked about that, and I talk about that at some

9    issue in my reply memo.

10        So statements on social media, those are statements in

11    a public forum on an issue of public interest.  Statements

12    of -- made to Mr. -- or Ms. -- West -- statements may well

13    fall within 2(a)(2).  I'm sorry.  Yeah, 2 -- 2(b) and also

14    2(c) and 2(d).

15        And some of the information on the issue of public

16    interest comes from Mr. Schwern's declaration about, you

17    know, what his place has been in the -- in the community in

18    which he and the defendant both work.  He claims that he is

19    an advocate for gender equity and antisexual harassment and,

20    in that manner, I mean, there's discussions of limited

21    public figures and that sort of thing.  I don't think we

22    need to get there.  I think we just need to look in the

23    arena in which these statements are made.  And I submit to

24    you that any of the statements that are attributed to people

25    that are not involved in the criminal justice process fall

1   within the protections of 31.150.  It's a -- it's not a high

2   burden, and I submit that we've met it in this case.

3          THE COURT:  Thank you.

4       Mr. Wilner-Nugent, I tend to agree that there's enough

5   evidence here, under one or more of the categories, to

6   suggest that the challenged statements here, which fall

7   within one of the categories of 31.150, but I want to hear

8   your response to that and then turn to your -- the second

9   step in the analysis, which is assuming that they do, which

10  is what I'm inclined to find, whether or not you've met your

11  burden as establishing a probability to prevail on your

12  claims.  And then we'll go back to Ms. Olson.

13          MR. WILNER-NUGENT:  Thank you, Your Honor.

14  Because Counsel addressed it, I'd like to take up, briefly,

15  the issue of the timing of the submission of evidence.

16  There is no rule that I can find in the Federal Rules of

17  Civil Procedure, this Court's local rules, or the ORS 31.150

18  series saying anything about the time when evidence must be

19  submitted.

20      I agree with Counsel that there's a local rule of

21  ORCP 1 E that talks about when you can submit responses and

22  replies and strictly when it's late filing of responses and

23  replies, which is why we have a motion to extend the time

24  for me to file my response in this case.

25          As -- you know, the issue of evidence, though, is

 1    completely different, and I don't think you can conflate a

 2    piece of evidence, a declaration or otherwise, with the

 3    response and reply deadline.

 4         The statute clearly says ORS 13 -- 31.150(4) that a

 5    plaintiff can -- can find substantial evidence in the

 6    affidavits and ORCP 1 E says you can use a declaration in

 7    place of an affidavit.  In this particular case, although

 8    I'm not saying that this should be dispositive, the issue is

 9    that Mr. West wanted his lawyer to look at his declaration

10    before he could submit it, and he got it back to me in the

11    nick of time.

12         But, in any event, that doesn't really matter.  The

13    point is that there is no timeline before the Court takes

14    the case under advisement for submitting evidence.

15    Moreover, because the best outcome, under the ORS 31.150

16    standard -- the best outcome defendant could get today would

17    be dismissal without prejudice, after which we could refile

18    the case with the allegedly late submitted declarations and

19    presumably other evidence included.  I think as a matter of

20    judicial economy, the Court should take both my declaration

21    and Mr. West's declaration into account when ruling, rather

22    than have us go through a purposeless refiling.

23         I understand the Court has made up its mind about the

24    applicability of ORS 31.150 in federal court.

25              THE COURT:  I'm inclined.

1          MR. WILNER-NUGENT:  Yeah, I know.

2          THE COURT:  But I don't know if I've made up my

3     mind, but --

4          MR. WILNER-NUGENT:  I won't make argument on that

5     point, because the Court's directed me not to, but I will

6     say that -- I'll just reiterate for the record what I said

7     in my response memorandum, which is that the Ninth Circuit

8     didn't take into account 31.155(2) and for the reasons

9     articulated by Chief Judge Kozinski in his dissent in *Trump*

10    *University*, I think that if the en banc court would have

11    taken this issue up, they would have overruled the panel's

12    previous decisions about allowing anti-SLAPP motions in

13    federal court.  But I'll just rest on that argument.

14          THE COURT:  All right.

15          MR. WILNER-NUGENT:  Referring to my response to

16    Counsel's argument regarding whether the law applies in the

17    first place, this is not the kind of case for which the

18    SLAPP -- anti-SLAPP laws were written.  Both the -- the

19    Oregon cases say explicitly that Oregon laws were based on

20    the California laws, because the California laws were really

21    the first comprehensive anti-SLAPP laws.  And the Oregon

22    laws say look to California case law's instructive, and both

23    the California and Oregon case law -- and you'll see this in

24    the Ninth Circuit case that's cited by Counsel -- discussed

25    the same common body of legislative history, which is that

1   the purpose of anti-SLAPP laws were to prevent people

2   from -- from organizations, entities, from being able to

3   squelch any speech about issues of public concern.  And the

4   problem here is that Counsel is bootstrapping a private

5   issue between two people into an issue of public concern by

6   indulging in a muddle of generality problem.  In other

7   words, the -- Counsel is attempting to discuss a -- the

8   generic issue of marital rape or sexual harassment or sexual

9   assault, call it what you will, the generic social issue

10  that applies to large numbers of people in a variety of

11  circumstances and which is inarguably a matter of public

12  concern and allege that the statements here were about that

13  issue.  But our allegations in our complaint, which I think

14  at this stage of the lawsuit have to be assumed to be true

15  for the context of the motion, I think the allegations of

16  the complaint are that there's private speech that we very

17  carefully pled.  As Counsel said in her original memorandum,

18  is a carefully drafted complaint.  I appreciate the

19  compliment.  We carefully pled it to avoid claims of

20  qualified privilege or absolute privilege, because we are

21  not complaining about statements made to police or the

22  district attorney's office or hospital workers or anything

23  like that.  We're complaining only about statements made to

24  private parties where there is no privilege that attaches

25  and those private statements saying not -- not discussing

1    the general issue of public concern and not discussing the

2    conduct of business by any public body, but, instead,

3    discussing one person's alleged conduct are not ipso facto

4    matter of public concern.

5        And so I -- I would argue, actually, respectfully, that

6    the SLAPP laws don't apply here.  But even if they do, I

7    still rest on my -- that we presented substantial evidence

8    or that with discovery we could present substantial

9    evidence.

10       First of all, the Court could take judicial notice of

11   the OJIN records in the brief -- and the short-lived

12   criminal case that happened involving Mr. Schwern, if the

13   Court needed additional evidence on that with regard to the

14   timing, because Counsel has brought up the timing of

15   judicial proceedings.

16       Counsel is saying, basically, that anything that is

17   said that's on the same subject matter as judicial

18   proceedings between two people is connected with them.  I

19   don't think that the case law set up by Counsel in her -- in

20   her memoranda even goes that far.

21       But I would note the exhibit that is submitted by

22   Counsel, which is attached to the declaration of

23   Ms. Plunkett, which is the restraining order petition, and

24   that is signed on November 21st, this is Exhibit 1, page 2

25   of 2.  The affidavit, I should say, in support of the

1   restraining order application in Massachusetts.

2       So to the extent Counsel is attempting to use that

3   judicial proceeding to immunize any of defendant's

4   statements, I think that comes too late, which I think that

5   Mr. West's declaration establishes that statements were

6   being made earlier in the year, 2013, prior to the filing of

7   that Massachusetts action.

8       I would also -- speaking of the Massachusetts action,

9   since it was brought up in the reply memorandum, I would

10  like to address that briefly.  I don't think that defendant

11  can use the Massachusetts action to establish anything of

12  consequence here, because Counsel is essentially making an

13  issue preclusion argument.  And under -- because we're

14  proceeding under Oregon law, where ORS 31.150, I think the

15  choice of law rules would say that Oregon issue preclusion

16  rules apply.

17      And under issue preclusion, the issues at stake have to

18  be identical.  I don't think we can say that the issues at

19  stake in the Massachusetts restraining order case and this

20  case are identical and that -- I'm going to say *Nelson v.*

21  *Emerald PUD* which is a very well-known Oregon issue

22  preclusion case, is my best authority for that.  I can give

23  you the full cite if you'd like.

24      In any event, the -- these statements that we're

25  complaining about were made after Mr. Schwern was released

1   from jail.  That is to say he was briefly jailed over one

2   night and then released.  And then by the next Monday, as we

3   allege in the complaint, he was told that the criminal

4   charges of strangulation and harassment, the misdemeanor

5   charges in which he had been jailed the previous week, had

6   been dropped.  There was no additional charging, no

7   additional case filed in any court after that.

8       And during that period that there was an investigation

9   of the district attorney's office, which, ultimately, as

10  we've explained in the complaint, decided not to move

11  forward, the statements to the district attorney are

12  privileged, but statements to third parties that have no

13  ability to affect the outcome of the case whatsoever and

14  that are made, we allege, with malice there to harm

15  Mr. Schwern, are not privileged.

16      And so those statements, we believe, can be found in

17  the declaration of Mr. West, but they can also be inferred

18  by the conduct to which Mr. Schwern testifies in his

19  declaration, in which incorporates the allegations of the

20  complaint.

21      In other words, this is someone who had been a luminary

22  in his community, who had been at the heart of it, and had

23  been working on this particular issue of the issue, which is

24  a very real issue -- the actual issue of public concern,

25  which is the issue of sexual harassment and assault at

1    high-tech conferences and events.

2        And the -- so our argument is that defendant made

3    precisely the statements that were best calculated to wound

4    plaintiff's ability to continue in his career, because they

5    attacked -- they attacked the special issue of interest that

6    had made him a star in his field, outside the simple

7    technical feats that he achieved in his career.

8        Our evidence in support of this argument that I'm

9    making is contained in Mr. Schwern's declaration.  I have

10   responses to some of the -- Counsel and I have an email

11   exchange, which I think could easily explain some of it to

12   the Court regarding some of Counsel's objections to the

13   evidence contained in my declaration.  And I think a lot of

14   the -- a lot of the matter that Counsel alleges is hearsay

15   or speculative could be stricken just for purposes of this

16   motion in the complaint, and the complaint would still

17   survive based on inferences that can be drawn from the

18   timing of the republication of the defamatory statements and

19   from Mr. West's declaration, which I think is a very key

20   piece of evidence.

21           THE COURT:  Well, give me that -- what I'd like to

22   just hear from you quickly, Mr. Wilner-Nugent, is the -- is

23   the inferential chain that you would proffer in this case.

24   You have statements made on public websites.  Presuming for

25   purposes of the argument that I find them to be covered by

1   anti-SLAPP statutes if initially made by the defendant to

2   the people who republish them, you are -- some of them are

3   defamatory, per se, they violate other issues that address

4   your claims.  But what's the inferential chain that lead

5   those back to the defendant?  I mean, that's -- there's

6   no -- except for the statement to Mr. West, it -- assuming

7   we consider that, there's no other direct evidence of

8   Ms. Plunkett speaking to any of these third-party sources.

9   And they certainly don't give attribution to her in any of

10  their reports.  So it -- tell me how there's enough to find

11  that you have a probability of success here.

12              MR. WILNER-NUGENT:  Other than Ms. West --

13  Mr. West's declaration, which I submit is all by itself

14  enough connected with the other supporting allegations in

15  the complaint, I would argue that Mr. Schwern testified that

16  friends have stopped speaking with him after Ms. Plunkett

17  moved to Boston.  That's paragraph 21 of the complaint.  I

18  think that the timing of that demonstrates that this friend

19  learned something from Ms. Plunkett that we believe is

20  false.

21      Regarding the allegations about the organizations --

22  the Ada Initiative, Geek Feminism, and the Stumptown

23  Syndicate -- Mr. Schwern is certainly competent to testify

24  based on his long involvement with each of these

25  organizations about the background allegations, portraying

1   to why the organizations are important, and the -- the

2   allegations, the publications contained in the exhibit says

3   that Mr. Schwern injured a community member, and it says

4   that the Ada Initiative declines now and in the future to

5   work with Michael Schwern, and the -- between the parties'

6   connections to the Ada Initiative, which are alleged in the

7   complaint and the timing of the publication of this kind of

8   severe social shunning, the sending him to coventry in his

9   community, I would argue that we made an inferential chain

10  that can be established.

11      And to the extent that we haven't, I would argue that

12  limited discovery could permit us to do so, because we could

13  subpoena each of these republishers.  And I have subpoenas

14  ready, and I could file them, because if -- if the motion is

15  dismissed, that's what I'm going to -- is denied, so that's

16  what I'm going to do, as well.  We can subpoena the

17  republishers and ask them to produce their communications

18  from Ms. Plunkett and their communications about

19  Mr. Schwern.

20      Additionally, of course, we could, and I would like to

21  take the deposition of Ms. Plunkett, and that's -- and I

22  would like to make a request for production directed to

23  Ms. Plunkett for her emails and her instant messages and her

24  text messages with regard to Mr. Schwern.

25              THE COURT:  So just so I'm clear, the statute

1    31.152(2) says that the Court on motion and for good cause

2    shown may order specified and limited discovery in

3    anti-SLAPP cases.

4        I didn't see in your briefing a request for a motion of

5    that sort.  Are you making that motion now or are you -- are

6    you saying we should win on the record, but, if we don't,

7    give me a chance for discovery, so I can do it again?  Or I

8    should win on this record, and if I don't, I'm going to --

9    I'm going to file again, since it's not a dismissal with

10   prejudice, and then I'll move for discovery?  Just so

11   I'm -- I make sure I understand the context in which I'm

12   dealing with your argument here.

13            MR. WILNER-NUGENT:  Thank you, Your Honor.  I did

14   make that request in our response at the bottom of page 4

15   and top of page 5 and then again in the conclusion on

16   page 11.  Oh, no, I'm sorry.  I didn't make it separately in

17   the conclusion.  I just said resolve in the state of

18   discovery.

19       But right above the conclusion, on page 11, the Court

20   should deny the special motion to strike outright or, at the

21   very least, should permit plaintiff to seek third-party

22   discovery augmented as evidence.  I guess I would expand

23   that request to say I'd also like to take the deposition of

24   Ms. Plunkett and ask her to produce the communications she

25   had made in writing about Mr. Schwern.  They're not

1    privileged.

2        But, Your Honor, I -- I certainly would reiterate that

3    request, which I made in my response on March 20th, if --

4    if, and only if, the Court is otherwise going to deny it and

5    willing to grant plaintiff's motion -- defendant's motion,

6    I'm sorry.

7        Any other questions the Court has for me, I'll be happy

8    to answer.

9            THE COURT:  Thank you.

10       Ms. Olson?

11           MS. OLSON:  Your Honor, that -- that sort of

12   discovery is exactly what the anti-SLAPP statute is intended

13   to prevent.  It -- back to the Casey West inferences that

14   you can draw from that, there's no inference that can be

15   drawn that Casey West is associated with the open-source

16   community, and therefore a source of any -- I -- I just -- I

17   submit there's no inferences that can be drawn, other than

18   that if the Court considers his order of declaration that my

19   client said something about the sexual assault to him on

20   her.

21       There was discussion by Mr. Wilner-Nugent about this

22   being an issue of public concern.  I -- or, I'm sorry.  I

23   can't remember his phrase, but I took issue with it, because

24   the issue is one of public interest.

25           THE COURT:  I think he was drawing a distinction

1   between the general discussion of assault in the workplace,

2   sexual harassment, et cetera, and a specific incident

3   which -- which he termed a private incident that -- that he

4   assaulted me and that doesn't -- that doesn't address in the

5   same generality the public concern.  It's much more of a

6   private interest, and that's -- that's an argument for

7   taking it outside of the anti-SLAPP categorical language.

8          MS. OLSON:  That's correct.

9      So the issue of public concern would have been, you

10  know, sexual harassment at open-source conferences.

11     But the law says "issue of public interest," so is

12  this -- is what happened between the two of them something

13  that is of interest in their community, the open-source

14  community, and because of the role in which Mr. Schwern

15  alleges that they -- or the roles that they played in that

16  community, I submit that it is an issue of interest in that

17  community and therefore falls within the provisions.

18     Your Honor, one thing what Mr. Wilner-Nugent didn't get

19  to was whether or not he's introduced substantial evidence

20  in support of each of the elements of the claims that he's

21  brought.  And the reason I went through with such detail in

22  my reply is that in order to survive this motion there has

23  to be evidence, admissible evidence on every one of the

24  elements.  And that evidence, has to be something that

25  would -- that presents us -- that supports a prima facie

1    case.

2         Mr. Wilner-Nugent hasn't addressed that at all.  I did.

3    And there are a number of elements that I submit are notably

4    absent in each of those, and that, for that reason, the

5    second step is one that Mr. Wilner-Nugent and his client

6    have not survived.

7         It's back to the original comments about California law

8    and what the purpose of this -- anti-SLAPP law works.  They

9    were actually all created for land use developers who tried

10   to squelch the little guys opposing big developments, but

11   there's no question that their use has evolved and many of

12   the cases that I've cited are California cases involving

13   criminal acts.  I'm sure this Court is -- is familiar with

14   the *Northon* case, which is often cited.  That arose from a

15   marital abuse -- an act of marital abuse, so criminal acts

16   are unquestionably within the -- within the scope of the

17   coverage of ORS 31.150, and this is, I think, my fifth or

18   sixth one of these motions that arose from an allegation

19   against the victim that the victim had defamed or otherwise

20   committed some sort of tortious act against the defendant by

21   bringing a criminal complaint against them.

22        So the use of the statute is very appropriate for this

23   type of context, and, for that reason, we'd ask that you

24   grant the motion.

25             THE COURT:  All right.  Thank you.  It's

1  interesting.  I had not had an anti-SLAPP motion in the

2  past.  I'll take this under advisement.  This is -- this is

3  a ninth and tenth case, so it will be a finding and

4  recommendation, and I'll address, within my finding and

5  recommendation, the question about the objection to evidence

6  generally and to Mr. West's declaration specifically.  And,

7  if necessary, depending on how the ruling comes out, your

8  request, Mr. Bear Wilner-Nugent for additional discovery and

9  staying the ruling on this until that discovery is

10  completed, and I'll try and get your ruling as soon as I

11  can.

12      Thank you very much.

13          MR. WILNER-NUGENT:  Thank you, Your Honor.

14          MS. OLSON:  Thank you, Your Honor.

15          THE COURT:  We're adjourned.

16              (FTR-recorded hearing concluded.)

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E
 2  MICHAEL G. SCHWERN,              )
                                     )
 3                    Plaintiff, )Case No. 3:14-cv-00146-PK
                                     )
 4              v.                   )
                                     )
 5  NOIRIN PLUNKETT,                 )
                                     )
 6                    Defendant. )  Portland, Oregon
    _____)
 7
 8
 9
10                    ORAL ARGUMENT
11                    April 9, 2014
12
13          I certify, by signing below, that the foregoing is
14  a true and correct transcript of the FTR-recorded
15  proceedings in the above-entitled cause.  A transcript
16  without an original signature, conformed signature, or
17  digitally signed signature is not certified.
18
19  /s/Jill L. Erwin, CSR, RMR, RDR, CRR
20  _____
21  Official Transcriber/Court Reporter  Date: August 11, 2014
22
23
24
25
```