Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
(503) 351-2327
Fax (503) 914-6665
bwnlaw@gmail.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MICHAEL G. SCHWERN, | Case No. 3:14-CV-00146-PK |
| Plaintiff, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT** |
| v. | |
| NÓIRÍN PLUNKETT, | |
| Defendant. | |

Plaintiff Michael G. Schwern, through counsel, respectfully submits this memorandum of law in support of his simultaneously filed motion for sanctions against defendant under Fed. R. Civ. P. 11 and this Court's inherent powers.

**FACTS**

Plaintiff sued defendant in diversity in this Court for defamation, intentional infliction of severe emotional distress, and intentional interference with prospective economic relations. *See*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 1

Complaint (#1). Defendant filed a special motion to strike the complaint (#4) under Or. Rev. Stat. §31.150 *et seq.*, which is otherwise known as an anti-SLAPP motion. In support of her special motion to strike, defendant submitted a declaration under penalty of perjury (#6).

Defendant's declaration begins: "I, Nóirín Plunkett, under penalty of perjury of the laws of the State of Oregon and the United States, hereby declare as follows." Defendant's declaration concludes: "**I declare under penalty of perjury under the laws of the United States of America and the State of Oregon that the foregoing is true and correct**" (emphasis in original). 28 U.S.C. §1746 permits the use of declarations under penalty of perjury in place of affidavits in federal civil actions. *See also* Or. R. Civ. P. 1 E.

Paragraph 8 of defendant's declaration explains that on November 21, 2013, defendant obtained an abuse prevention order against plaintiff in the Cambridge, Massachusetts District Court, under Mass. Gen. Laws c. 209A. The abuse prevention order is attached to defendant's declaration as Exhibit 2.

Paragraph 10 of defendant's declaration alleges that plaintiff subsequently violated that restraining order by supposedly arranging to have roses delivered to defendant on her birthday. In its entirety, paragraph 10 reads:

> On January 27, 2014, which was my birthday, I received a delivery of six white roses at my temporary residence in Cambridge, Massachusetts. I believed they had been sent by plaintiff because we had shared an interest in World War II history, and at one time had discussed the story of the execution of six leaders of White Rose, a German resistance group. I contacted the police and reported my suspicions, and was told that the flowers had been ordered online by "Michael S." A true copy of the police report as provided to me is attached as Exhibit 3.

Exhibit 3 to defendant's declaration, the Cambridge Police report, says:

> Ms. Plunkett stated that at her residence at 1:50pm she received six white roses from Central Florist of 653 Mass Avenue, Cambridge. Plunkett stated that there was no note stating place of origin or who sent the flowers. Plunkett stated that she [h]as a restraining order for her ex-boyfriend, Michael Schwern, DOB [redacted] and strongly believed the

> flowers were sent by him in violation of the restraining order… Plunkett further stated that she shared an interest in World War II history with Schwern. The significance of her birthdate and the six roses coincides with the execution of six members of the underground White Roses Group during World War II. Ms. Plunkett can be reached at [phone number redacted]. Her companion, Andrew Matteson, DOB [redacted] can be reached at [phone number redacted] and may be of assistance in reaching Plunkett by phone.
>
> I met with David Levine, DOB [redacted], owner of Central Sq. Florist [phone number redacted]. Mr. Levine stated that the order for the flowers was placed by a third party contractor, Task Rabbit. Task Rabbit takes orders [that] are placed on line. The Task Rabbit contractor identified himself as Shane Windstorm, [address redacted], Watertown, MA and can be reached at [phone number redacted]. Windstorm stated that the order was placed by a Michael S. A photo of Michael Schwern was sent to my cell phone by Matteson and shown to Levine. Levine stated that this was not the person who ordered the flowers.

Defendant relied on her declaration in her memorandum in support of the special motion to strike (#5). She discussed the events narrated in paragraph 10 of the declaration on pages 1, 2, 3, and 5 of that memorandum, citing the declaration as the evidentiary basis for her claims. After reviewing the briefing and hearing oral argument, Judge Papak recommended that the Court deny the special motion to strike. Judge Papak described the rose delivery on pages 9 and 10 of his findings and recommendation (#21).

Defendant objected to the findings and recommendation, but Judge Hernández overruled her objections and entered an order denying the motion (#25). Defendant appealed to the United States Court of Appeals for the Ninth Circuit. Defendant discussed the rose delivery claim on pages 6 and 7 of her opening brief, again citing to her declaration and the Cambridge Police report. *See* Exhibit 11 (excerpts of brief).[1] Defendant's appeal has been fully briefed and is pending placement on the oral argument calendar.

While the findings and recommendation objections process was pending, plaintiff,

---

[1] Plaintiff numbers the exhibits to this motion starting with exhibit number 11 to avoid confusion with the exhibits to defendant's declaration.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 3

represented by attorney Andrew McLain, moved in the Multnomah County Circuit Court for an order to show cause regarding enforcement of the parties' divorce judgment (case no. 130970265). Erin K. Olson, defendant's former counsel in this Court, also represented defendant in her opposition to the state court show cause motion. In that capacity, Ms. Olson filed a declaration by defendant that is attached as Exhibit 12 to this motion. Paragraph 5 of defendant's state court declaration cites defendant's declaration in this Court, stating that "a true copy of the declaration I filed in that matter, which contains a more complete recitation of the events that have occurred following the filing of our divorce petition, is attached hereto as **EXHIBIT D**." Exhibit D also contains a copy of the false Cambridge Police report.

On December 11, 2014, plaintiff's counsel sent a letter to TaskRabbit Inc. asking it to preserve any relevant evidence in its possession for a later subpoena. In the letter, plaintiff's counsel explained that he currently lacked the ability to issue a subpoena for this evidence since discovery was stayed by order of this Court pending defendant's appeal. That letter is attached as Exhibit 13.

Defendant then created an alternate opportunity for plaintiff to obtain the evidence in question. She asked the Cambridge District Court to renew her abuse prevention order. Plaintiff retained Massachusetts attorney Edward W. Krippendorf, Jr. to oppose defendant's request to renew the order. Because defendant was alleging that the rose delivery constituted a violation of the order, and hence a basis to renew it, Mr. Krippendorf issued a subpoena to TaskRabbit for any evidence of the rose delivery in their possession. TaskRabbit's attorney's response to Mr. Krippendorf is attached as Exhibit 14.

The relevant portions of TaskRabbit's files concerning the Rose Delivery are attached as Exhibit 15. Here are the reasons why these files establish that defendant or someone acting on

her behalf, not plaintiff, placed the TaskRabbit order for the rose delivery:

1.      Defendant's telephone number, 646-450-4596, appears on the TaskRabbit account. *See* Exhibit 15 at 1-4, 16-19. This is the same number that appears on defendant's online curriculum vitae, which is attached as Exhibit 16.

2.      Defendant's ZIP code, 02139, appears on the TaskRabbit account. *See* Exhibit 15 at 1-4, 19.

3.      The account uses an email address, whiterose@mailinator.com, that there is no evidence plaintiff has ever used. As a review of mailinator.com's FAQ (http://mailinator.com/faq.html) will reveal, mailinator.com offers disposable, nonsecure email addresses suitable for hiding the trail of a transaction.

4.      Defendant's name appears in the payment information section of the TaskRabbit account. *See* Exhibit 15 at 4. This is because defendant chose to associate her own name with the credit card that she used to place the TaskRabbit order. *See* Exhibit 15 at 19, in which the TaskRabbit staff note their own suspicions concerning this fact and cite as their source a link to their payment processor, Braintree Gateway (https://www.braintreegateway.com/merchants/wcbx44k52q4nxd5f/payment_methods/cysk4y). Plaintiff's counsel is unable to follow that link because he is not a registered user of Braintree Gateway. The card in question, 469086******2239, appears to be a prepaid Visa debit card.

5.      Defendant has never presented any evidence tending to establish how plaintiff could have learned the address of what she told this Court in her declaration was her "temporary residence." Declaration of Nóirín Plunkett (#4) ¶10. This is particularly interesting given the detailed delivery instructions furnished by defendant to TaskRabbit:

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 5

"1107 is down an alley beside 1111. If there's no one there, just leave them by the door." Exhibit 17, which is attached, is a screenshot of the historical Google StreetView image of 1111 Cambridge Street (taken in September 2013) that would have been viewable by a Google user on January 27, 2014. As can plainly be seen, there is nothing in this StreetView image that would have informed plaintiff, if *he* were the sender of the flowers, to tell TaskRabbit to head down the alley to find 1107 Cambridge Street. The detailed delivery instructions thus support the conclusion that the actual originator of the task was defendant (or someone acting on her behalf).

6. The TaskRabbit account used to order the flowers was created on January 24, 2014, only three days before the flowers were sent. Exhibit 15 at 4.

7. This account was created and accessed using networks designed to obfuscate the user's IP address. *See* Exhibit 15 at 10. 77.247.181.164 is a TOR server and 162.213.39.205 is a cloud server. (173.247.192.214 is a public internet server in San Francisco, and is probably an artifact of the internal TaskRabbit investigation that the Cambridge Police requested, because TaskRabbit is located in San Francisco). These are tools with which defendant's professional background has familiarized her.

To reiterate, the police-TaskRabbit communications reproduced in Exhibit 15 demonstrate that the Cambridge Police had full access to all of this evidence over a year ago. They investigated this matter to the best of their ability, but they did not charge plaintiff with violating the abuse prevention order. That is presumably because the Cambridge Police could not rule out the strong possibility that defendant herself created the TaskRabbit account under plaintiff's name and then placed, or had someone working on her behalf place, the order for the white roses.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 6

The evidence belies the alternate hypothesis that defendant might propose. After all, why would plaintiff go to all the trouble to create a TaskRabbit account by such a circuitous method and then put his own name on the account, knowing that defendant had an abuse prevention order against him? And if plaintiff did in fact create such an account, why wouldn't the (presumably professional and capable) Cambridge Police charge him with a crime or a violation of the abuse prevention order for doing so? Plaintiff did not create the TaskRabbit account from which the white roses were ordered. In light of the context of the parties' relationship and the pending litigation, the evidence points instead to defendant as the true creator of the account. Plaintiff never gave defendant permission to use his name in this way.

On February 25, 2015, plaintiff's counsel sent a letter to Ms. Olson in which plaintiff's counsel explained his conclusion that the portion of defendant's declaration concerning the rose delivery was false and the reasons for that conclusion as detailed above. On March 13, 2015, plaintiff's counsel sent a second letter about this and related issues to Ms. Olson. In both letters, plaintiff's counsel asked Ms. Olson to withdraw defendant's false declaration.

Presumably due to the strictures of Or. Rule Prof. Conduct 1.6, Ms. Olson did not withdraw the declaration or inform the Court about its falsity as plaintiff had requested. *See* Or. Rule Prof. Conduct 3.3(a)(3), (b), and (c) (providing that an attorney's obligation to correct a client's false statements to a tribunal may be limited by the attorney's duty to protect client confidences under Rule 1.6). Instead, on March 27, 2015, Ms. Olson moved to withdraw from her representation of defendant in this Court and the Ninth Circuit. *See* Motion to Withdraw (#40). Considering the totality of the apposite rules of professional conduct, Ms. Olson's conduct is understandable. In the absence of any evidence that Ms. Olson knew defendant's declaration was false when it was filed or when she later relied on it, Ms. Olson's conduct does not merit

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 7

sanctions.

Defendant, however, is not a lawyer. Defendant had an independent obligation to step forward and admit her own falsehood. She has not done so. Accordingly, plaintiff turns to the legal basis for the imposition of sanctions against defendant personally.

## ANALYSIS

Fed. R. Civ. P. 11(b) provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation…
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…

Fed. R. Civ. P. 11(c)(1) provides, in pertinent part:

> If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

A federal court may also levy sanctions, including attorney fees, under its inherent power "for willful disobedience of a court order… or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Express, Inc., v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

Filing a false declaration under penalty of perjury constitutes the presentation of a paper for an improper purpose in violation of Rule 11(b)(1). *Arthur Children's Trust v. Keim,* 994 F.2d

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 8

1390, 1399 (9th Cir. 1993). Additionally, defendant's declaration and the subsequent filings in which defendant cited to that declaration also lack evidentiary support in violation of Rule 11(b)(3). *See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 535, 111 S.Ct. 922, 122 L.Ed.2d 1140 (1991) (holding that Rule 11 "imposes an objective standard of reasonable [factual] inquiry on represented parties who sign pleadings, motions, or other papers"); *see also Security Farms v. Int'l Brotherhood of Teamsters*, 124 F.3d 999, 1016-1017 (9th Cir. 1997), citing *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994).

Based on the evidentiary analysis presented above, the attached exhibits, and the other portions of the Court's file in this action that relate to the issues discussed on this motion, the Court should find as a matter of fact that paragraph 10 of defendant's declaration in support of the special motion to strike and the relevant statements by defendant in Exhibit 3 to that declaration are false. If the Court makes that finding, then plaintiff suggests that the Court impose the following sanctions against defendant:

First, the Court should strike the false declaration, or at least the relevant paragraph of it and the exhibit to that paragraph. If nothing else, defendant should not be able to rely on her controverted claim about the rose delivery in subsequent stages of this action. After making certain findings, courts may strike sham affidavits submitted in opposition to summary judgment. *Van Asdale v. Int'l Game Technology*, 577 F.3d 989 (9th Cir. 2009). *A fortiori*, Rule 11 and the Court's intrinsic powers must extend to the striking of false testimony presented by declaration.

Second, the Court should order defendant to reimburse plaintiff for his attorney fees and costs expended in responding to defendant's special motion to strike and in furtherance of this motion for sanctions. "[A] court may assess attorney's fees when a party has '"acted in bad faith, vexatiously, wantonly, or for oppressive reasons."' *Alyeska* [*Pipeline Serv. Co. v. Wilderness*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 9

*Soc'y*, 421 U.S. 240,] 258-259, 95 S.Ct. 1612, 44 L.Ed.2d 141 [(1975)] (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974))." *Chambers*, 501 U.S. at 45-46. The reason for imposing a monetary penalty that goes beyond the expense of the sanctions motion itself is that the false declaration was the central piece of evidence that defendant submitted in support of her special motion to strike. That motion, in turn, has shaped the course of this action for over a year.

Finally, the Court should order defendant to show cause why she should not be held in contempt. Intentionally filing a false declaration under penalty of perjury is an egregious act that strikes directly at the bedrock expectation of integrity in court proceedings. Contempt requires a finding based on clear and convincing evidence, which is why further proceedings initiated by the Court's order to show cause would be necessary before the Court could make it. *In re Dual Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Such further proceedings, which could include the examination under oath of defendant and other witnesses, should result in a finding of contempt, however. A finding of contempt will be a formal and durable statement that defendant's conduct in this case was intolerable. It will serve to warn both defendant and others not to repeat such conduct.

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiff's motion and impose the following sanctions against defendant:

1.      Strike the Declaration of Nóirín Plunkett (#6), or at least Paragraph 10 of and Exhibit 3 to that declaration;

2.      Order defendant to reimburse plaintiff for his attorney fees and costs expended in

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS
AGAINST DEFENDANT – Page 10

responding to Defendant's Special Motion to Strike (#4) and in furtherance of this motion for sanctions; and

3.  Order defendant to show cause why she should not be found in contempt of court.

RESPECTFULLY SUBMTTED May 4, 2015.

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Plaintiff

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT – Page 11