Lake James Hammond Perriguey, OSB 983213
lake@law-works.com
Law Works LLC
1906 SW Madison Street
Portland, OR 97205
503-803-5184
Fax 503-334-2340

Dan Booth, MA Bar #672090 (admitted *pro hac vice*)
dbooth@boothsweet.com
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
617-250-8602
Fax 617-250-8883

*Attorneys for Putative Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MICHAEL G. SCHWERN**, | Case No. 3:14-cv-00146-PK |
| **Plaintiff**, | |
| | **PATRICK PLUNKETT'S MOTION** |
| v. | **FOR RELIEF UNDER FED. R. CIV.** |
| | **P. 60(b)(1), and MOTION TO** |
| **PATRICK PLUNKETT**, personal | **DISMISS UNDER FED. R. CIV. P.** |
| representative of the estate of Nóirín Plunkett, | **12(b)(2), 12(b)(5), and 12(b)(6)** |
| **Putative Defendant**. | **Oral Argument Requested** |

Putative substitute defendant Patrick Plunkett respectfully requests that, under Fed. R. Civ. P.

60(b)(1), the Court vacate its order (Doc. 64) granting Plaintiff's motion to substitute defendant

(Doc. 63; "Motion"), and dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12

(b)(6). Substitution was premature because Plaintiff has not properly served Mr. Plunkett, and so

failed to establish personal jurisdiction. Additionally, Plaintiff's claims do not survive the death of

defendant Nóirín Plunkett. Therefore the action should be dismissed, as further discussed below.

In compliance with LR 7-1(a) undersigned counsel certifies that he conferred with Plaintiff's counsel in a good-faith attempt to resolve the issues presented herein but was unable to do so.

## Procedural History

Plaintiff Michael Schwern filed his complaint against his ex-wife Nóirín Plunkett, the original defendant. Doc. 1. Nóirín filed an anti-SLAPP motion to strike all claims pursuant to ORS 31.150. Doc. 4. The Court denied the motion. Doc. 21, 25. Nóirín noticed an appeal and moved to stay all proceedings in this Court until the appeal is finally decided. Doc. 26, 29. The Court granted the motion to stay. Doc. 38. Plaintiff moved to lift the stay in order to litigate a motion for sanctions against Nóirín. Doc. 44, 45. The Court denied Plaintiff's motion. Doc. 60.

Nóirín died on July 28, 2015. On July 31, 2015, Nóirín's death was noted on the record in a statement of death served that same day on Plaintiff via ECF and on Nóirín's father Patrick Plunkett by hand. Doc. 61 p. 2. It was also noted that day in a joint status report filed on behalf of Plaintiff and Nóirín. Doc. 62. In Massachusetts, where Nóirín resided, the Middlesex Probate and Family Court appointed Mr. Plunkett as the personal representative in unsupervised administration of Nóirín's estate on October 21, 2015. *See* Doc. 63 pp. 1-2.

On October 27, 2015, Mr. Plunkett moved to be substituted as the appellant in the pending Ninth Circuit appeal. *See id.* p. 2. The Ninth Circuit granted his motion on October 30, 2015.

On October 27, 2015, Plaintiff filed his motion to substitute Mr. Plunkett as the defendant in this Court. *Id.* ("Motion"). Plaintiff served the Motion via ECF on the undersigned counsel, who had been Nóirín's counsel. Plaintiff did not serve the Motion upon non-party Mr. Plunkett under Fed. R. Civ. P. 4. On October 29, 2015 the courtroom deputy asked undersigned counsel if Mr. Plunkett planned to respond to the Motion, and counsel responded that "Mr. Plunkett will not oppose the motion, as long as it is properly served on him consistent with Rule 25." On October

30, 2015 the deputy told Plaintiff, "Judge Papak would like for you to file a Certificate of Service

with regard to your motion to substitute before he rules on it." Plaintiff replied that day:

> ... On October 29, as you know, you asked Mr. Booth if he would be filing a
> formal response to the motion. Mr. Booth said, "Mr. Plunkett will not oppose
> the motion, as long as it is properly served on him consistent with Rule 25." I asked
> Mr. Booth if he would require personal service pursuant to Rule 4. Mr. Booth said
> that he would. I want to emphasize that it was only at that point -- yesterday --
> that I first learned that Mr. Booth would require personal service.
> I immediately began preparing the paperwork for service on Mr. Plunkett through
> Ireland's Central Authority as required under the Hague Convention on the
> Service Abroad of Judicial and Extrajudicial Documents, in keeping with Rule 4(f)
> (1). I was unable to complete that paperwork yesterday due to family
> responsibilities. I am completing it today. It will take some time, though, to serve
> the motion on Mr. Plunkett in Ireland and then obtain and file a proof of service.
> Until that time, I would respectfully request that the Court keep the motion under
> advisement and not rule on it.
> ... I will continue to prepare the Rule 25 motion for personal service on Patrick
> Plunkett in Ireland through that country's Central Authority.

Mr. Plunkett's counsel notified Plaintiff and the deputy on that day that he would not object

to service made within a reasonable time, specifically within 120 days of the notice of death:

> There's no need for any agita over a looming deadline. Mr. Plunkett has no
> objection to service made within a reasonable time, and that time is still a month
> away.
> Rule 25 requires that the motion to substitute be "made" within 90 days of the
> notice of death, and by my count, the motion was filed on day 88. The Rule does
> not state that *service* of the motion is also required within 90 days. Under Rule 25
> (a)(3), service is required as provided in Rule 4, so I'd refer there to determine a
> reasonable time. Rule 4(m) allows service within 120 days. The amended Rule 4,
> which will limit that to 90 days, won't be effective until December 1, after the 120
> days have passed.
> I will note that nothing required Mr. Schwern to wait for the probate court to take
> action before filing his motion, and that there has never been any suggestion that
> anyone other than Mr. Plunkett would be the appropriate representative for the
> estate to make a substitute party. (In my September 22 email, I told Mr. Wilner-
> Nugent, "I believe Nóirín's father Patrick Plunkett will be the personal
> representative of the estate, and I presume that your motion would be to appoint
> him, but please let me know if you had other intentions." I never heard anything
> to the contrary.)

PATRICK PLUNKETT'S MOTION FOR RELIEF AND MOTION TO DISMISS

The Court granted Plaintiff's Motion on November 3, 2015, without awaiting service. Doc. 64. Plaintiff provided the Motion to a process server on January 15, 2016, who delivered a copy, without a notice of hearing, to Mr. Plunkett at his home in Ireland on January 18, 2016. Doc. 67.

## Legal Standard

Federal Rule of Civil Procedure 25 governs the procedure for substitution after the death of a party. *See Robertson v. Wegmann*, 436 U.S. 584, 587 n. 3 (1978). Rule 25(a)(1) provides in full:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1) ("Substitution if the Claim Is Not Extinguished").

Rule 25(a)(3) sets forth the service requirements for a motion to substitute. It provides in full:

> A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

Fed. R. Civ. P. 25(a)(3) ("Service"). The requirement of Rule 4 service is jurisdictional. *Giles v. Campbell*, 698 F.3d 153, 159 (3d Cir. 2012); *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994).

"Federal Rule of Civil Procedure 4 governs service of process in federal district court." *Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir. 2004). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Id.* at 801. "Unless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(*l*)(1).

Federal Rule of Civil Procedure 4(m) as amended effective December 1, 2015 provides in full:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does

4

PATRICK PLUNKETT'S MOTION FOR RELIEF AND MOTION TO DISMISS

not apply to service in a foreign country under Rule 4(f) or 4(j)(1) or to service of a
notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m). Under the 2015 amendment to Rule 4(m), "[t]he presumptive time for

serving a defendant is reduced from 120 days to 90 days." Fed. R. Civ. P. 4 (adv. comm. note)

(2015). "Although Rule 4(m)'s time limit does not apply to service in a foreign country," it

provides guidance for the reasonable time limits a district court may set "for service in a foreign

country to properly manage a civil case." *Baja Devs. LLC v. TSD Loreto Partners*, No. CV-09-756-

PHX-LOA, 2009 U.S. Dist. LEXIS 83268, *3 (D. Ariz. Aug. 27, 2009); *accord Prudent Trust Co. Ltd.

v. Touray*, No. 2:14-cv-08965-RSWL-MAN, 2015 U.S. Dist. LEXIS 62979, *3-5 (C.D. Cal. May

13, 2015) (dismissing claim against foreign defendant not validly served within six months).

Federal Rule of Civil Procedure 4(f)(1) permits service on an individual "at a place not within

any judicial district of the United States ... by any internationally agreed means of service that is

reasonably calculated to give notice, such as those authorized by the Hague Convention on the

Service Abroad of Judicial and Extrajudicial Documents [the "Hague Convention" or

"Convention"] [.]" Fed. R. Civ. P. 4(f)(1). Compliance with the Convention is "mandatory" for

service of judicial documents abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699

(1988). "By virtue of the Supremacy Clause, U.S. Const., Art. VI, the Convention pre-empts

inconsistent methods of service prescribed by state law in all cases to which it applies." *Id.*

 "On motion and just terms, the court may relieve a party or its legal representative from a

final judgment, order, or proceeding for … mistake, inadvertence, surprise, or excusable neglect."

Fed. R. Civ. P. 60(b)(1). "Rule 60(b)(1) … grants the power to 'correct judgments … which have

issued due to inadvertence or mistake.'" *Harvest v. Castro*, 531 F.3d 737, 746 (9th Cir. 2008) (*quoting

Am. Trucking Ass'n v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1978)); *accord Kingvision Pay-Per-View v.

Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 1999).

PATRICK PLUNKETT'S MOTION FOR RELIEF AND MOTION TO DISMISS

Federal Rule 12(b) specifies seven defenses that may be asserted by motion, including: "(2) lack of personal jurisdiction; … (5) insufficient service of process; and (6) failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(2), (5) & (6).

A purported substitute defendant may move to dismiss for failure to serve, even after substitution is granted. *Miles, Inc. v. Scripps Clinic & Research Found.*, 810 F. Supp. 1091, 1102 (S.D. Cal. 1993) (treating motion to dismiss as "in effect, asking for reconsideration" of substitution).

**Argument**

Plaintiff has not served on Mr. Plunkett a "motion to substitute, together with a notice of hearing" as Rule 25(a)(3) requires. That deficiency is jurisdictional, and voids the substitution order that allowed the Motion before it was served. The order should be vacated and the action should be dismissed for lack of personal jurisdiction and insufficient service of process under Rules 12(b)(2) and 12(b)(5). In addition, all claims against the deceased Massachusetts defendant Nóirín Plunkett were extinguished upon death, so they may not be maintained pursuant to Rule 25(a)(1). No relief may be granted against Mr. Plunkett, the administrator of Nóirín's estate, so the action should be dismissed under Rule 12(b)(6).

**A. Plaintiff lacks personal jurisdiction over Mr. Plunkett absent service.**

A non-party is not subject to personal jurisdiction as a party until properly served under Rule 4. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolph Wolff & Co.*, 484 U.S. 97, 104 (1987). "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed. R. Civ. P. 4." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986) (*citing Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982)). "In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not

exercise power over a party the complaint names as defendant." *Murphy Bros. v. Michetti Pipe Stringing*, 523 U.S. 344, 350 (1999) (*citing Omni Capital* and *Mississippi Publ'g*). "Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id*. (*citing* Fed. R. Civ. P. 4(a) & 12(a)(1)(A)).

"[T]he service required by Rule 25(a)(1) on nonparties, specifically the successors or representatives of the deceased party's estate, must be service pursuant to Rule 4." *Grandbouche v. Lovell*, 913 F.2d 835, 837 (10th Cir. 1990). A non-party proposed as a substitute under Rule 25 only becomes a party when properly served a motion to substitute and notice of hearing in the manner Rule 4 provides. *Giles v. Campbell*, 698 F.3d 153, 158 (3d Cir. 2012); *cf. Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994) (discussing service of suggestion of death). *See generally Macias v. N.M. Dep't of Labor*, 300 F.R.D. 529, 571 (D.N.M. 2014) (noting that Rule 5(b)(1) allows service on a party's attorney while Rule 4(e)-(j) make no such provision). Thus, an estate administrator "is not a party and will not be" unless a motion to substitute is served and granted. *Lopes v. Vieira*, No. CV-F-06-1243, 2010 U.S. Dist. LEXIS 48798, *6 (E.D. Cal. May 17, 2010).

Jurisdiction over the non-party to be substituted requires Rule 4 service. "Rule 4 service of the motion to substitute is for the purpose of acquiring personal jurisdiction over non-parties." *Ransom v. Brennan*, 437 F.2d 513, 518 (5th Cir. 1971), *cert. denied*, 403 U.S. 904 (1971). "[W]hile Rule 5 is 'clerical and administrative in nature' and applies to papers filed after the complaint, Rule 4 is 'jurisdictionally rooted.'" *Giles*, 698 F.3d at 159 (*quoting Ransom*, 437 F.2d at 516-17).

Electronic service on a proposed substitute's attorney is insufficient to establish personal jurisdiction over, or Rule 4 service of process on, Mr. Plunkett personally. "Service on decedent's attorney was inadequate.... [A] motion to substitute ... should have been served on the nonparty

PATRICK PLUNKETT'S MOTION FOR RELIEF AND MOTION TO DISMISS

representative of the deceased, not merely on the deceased's attorney, to satisfy Rule 25(a)(1)." *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985). Service on an attorney under Rule 5 "cannot be substituted for service under Rule 4." *Giles*, 698 F.3d at 159 (*citing Ransom*, 437 F.2d at 518). "[A] motion to substitute filed without serving the personal representative of the deceased [party's] estate was 'a nullity.'" *Id*. (*quoting Atkins v. City of Chicago*, 547 F.3d 869, 874 (7th Cir. 2008)). *Cf.* LR 5-1(a)(2) ("there is no electronic service of a complaint").

Service on the original defendant also does not subject the substitute to personal jurisdiction. *Ransom*, 437 F.2d at 518, *cert. denied*, 403 U.S. 904 (1971); *cf. Williams v. Santa Cruz*, 471 Fed. App'x 581 (9th Cir. 2012) (distinguishing claim against public official sued in official capacity, for whom Fed. R. Civ. P. 25(d)(1) provided automatic substitution upon death). When a defendant dies after service, the plaintiff must "reacquire" personal jurisdiction over any substitute defendant by both filing and serving a motion to substitute consistent with Rule 25(a)(1). *Ransom*, 437 F.2d at 520. Even the administrator's actual notice of the motion to substitute "would not operate as a substitute for process." *Id.* at 520. Substitution is not effective without service.

**B.  Plaintiff has not accomplished service.**

Plaintiff has not effected service on Mr. Plunkett. Plaintiffs' attempts to serve do not suffice.

First, Plaintiff has not attempted to serve what Rule 25(a)(3) calls for: a "motion to substitute, together with a notice of hearing." The Rule "requires that service of the motion for substitution must include service of a 'notice of hearing.'" *Gudde v. Evergreen Realty Group, LLC*, No. 09-cv-2341 JWL/GWR, 2010 U.S. Dist. LEXIS 142747, *5 (D. Kan. Apr. 21, 2010). "Movants should contact the chambers of the undersigned in order to obtain a date and time for such hearing and thus enable themselves to meet the requirement of the rule. Of course, the date should allow sufficient time for service and return of the process and for the non-parties to appear." *Id.*

*Accord Columbian Bank & Trust Co. v. Miller*, 384 Fed. App'x 524, 525 (8th Cir. 2010) ("Rule 25(a)(3) does anticipate a hearing."). The hearing may not be waived in the face of a factual dispute over whether the movant is entitled to substitution as a matter of law. *Cf. Luxliner P.L. Export Co. v. RDI/ Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993) (disputed Rule 25(c) substitution required evidentiary hearing). Service of a motion to substitute without a notice of hearing is insufficient even if the proposed substitute has actual notice of the lawsuit. *Finney v. Metzger*, No. 99-4144-RDR, 2002 U.S. Dist. LEXIS 21708, *4 (D. Kan. Oct. 15, 2002). The service requirements of Rule 4, expressly incorporated in Rule 25(a)(3) as to non-parties, require strict compliance because they are jurisdictional. *Giles*, 698 F.3d at 159; *Ransom*, 437 F.2d at 517. Plaintiff neither sent Ireland's Central Authority nor a private process server the requisite notice of hearing, so no Plaintiff attempt to serve Mr. Plunkett has satisfied Rule 25(a)(3).

Second, Plaintiff has not effected service that complies with the Hague Convention. "Because service of process was attempted abroad, the validity of that service is controlled by the Hague Convention, to the extent that the Convention applies." *Brockmeyer*, 383 F.3d at 801 (*citing Volkswagenwerk*, 486 U.S. at 705). "Under the Convention, each contracting State designates a Central Authority to accept requests for the service of process within its territorial jurisdiction. When requested to make service, the Central Authority does so in the manner permitted by the law of the receiving State." *Feliz v. United States*, 272 F.R.D. 299, 302 (D. Mass. 2011), *aff'd sub nom. Feliz v. MacNeill*, 493 Fed. App'x 128 (1st. Cir. 2012) (Souter, J., sitting by designation).

"The United States and Ireland are both signatories to the Hague Convention, and ... Defendant must be served in accordance with the Hague Convention." *GCUI-Employer Ret. Fund v. Coleridge Fine Arts*, No. 14-2303-EFM-GLR, 2015 U.S. Dist. LEXIS 17007, *2 (D. Kan. Feb. 12, 2015). To comply with the Convention, service in Ireland must be made either by the Central

Authority itself or by a solicitor in Ireland. "The primary method of service [under the Hague Convention] is for a party to mail process to the Central Authority, and the Central Authority then effects service on the [defendant] according to local law." *Id.* Ireland ratified the Convention subject to certain objections to certain means of service, but its objections were expressly "not intended to preclude any person in another Contracting State who is interested in a judicial proceeding (including his lawyer) from effecting service in Ireland directly through a solicitor in Ireland." *Id.* *3-4 (quotation omitted).

Plaintiff informed the Court on October 30, 2015 that he would effect service through Ireland's Central Authority. He evidently abandoned that path and retained a private process server instead. *See* Doc. 67. The process server is not an agent of Ireland's Central Authority or a solicitor in Ireland or elsewhere. *Id.* Whatever his authority to serve legal documents in Ireland may be, it did not render his service on Mr. Plunkett compliant with the Hague Convention.

## C.  The Court should vacate its order granting the motion for substitution.

The Court erred in ruling on the Motion before it was properly served. When the Court requested a certificate of service before ruling on the Motion, Plaintiff explained that he had not provided or effectuated service, and asked the Court to keep the Motion under advisement and not rule on it until he had served the Motion and filed proof of service. Mr. Plunkett explained that he would not oppose if properly served. But he has not been, and absent Rule 4 service he is not subject to personal jurisdiction. The Court may not enter an order against a non-party. *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 111 (1969). "A judgment is void if the court lacks personal jurisdiction." *In re Harlow Properties, Inc.*, 56 B.R. 794, 796 (9th Cir. Bankr. 1985) (holding "individuals who were never served with a motion resulting in an order adversely affecting their rights and who have not waived the defense of lack of personal jurisdiction" may challenge

personal jurisdiction on appeal and vacating such order). Granting a motion to substitute a non-party not served with process conflicts with the Fourteenth Amendment's Due Process clause. *Int'l Ass'n of Machinists Nat'l Pension Fund v. Estate of Dickey*, 808 F.2d 483, 485 (6th Cir. 1987) (citing *Hansberry v. Lee*, 311 U.S. 32, 40-41 (1940)). Because Plaintiff has not properly served the Motion, it was improvidently granted and should be vacated.

**D. The action against Mr. Plunkett should be dismissed for lack of personal jurisdiction and insufficient process.**

Plaintiff has not given timely, valid service on Mr. Plunkett so the case should be dismissed.

The time for making a motion for substitution is 90 days after a notice of death is filed. Fed. R. Civ. P. 25(a)(1). "Rule 25(a)(1) provides that the action is to be dismissed as to the deceased party, unless substitution is made not later than ninety days after the death is suggested upon the record." 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 25.06 (2d ed. 1990). Substitution is untimely where the motion is not served on the proposed substitute within 90 days after service of the notice of death. *Miles, Inc.*, 810 F. Supp. at 1101-02.

The 90-day time limit under Rule 25(a)(1) is triggered when a statement noting the death is made on the record and served on all parties under Rule 5 and nonparty successors or representatives under Rule 4. *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994). "[I]f a party dies, ideally his or her attorney will file a suggestion of death with the court and serve it upon all parties. After the suggestion of death is filed, a 90-day countdown begins." *McKenna v. Pac. Rail Serv.*, 32 F.3d 820, 836 (3d Cir. 1994). "Rule 25 begins the 90-day clock with 'service' of the statement, not filing." *Mandarino v. Mandarino*, 257 F.R.D. 394, 395 n. 3 (S.D.N.Y. 2009). The 90-day clock started to run on July 30, 2015, when Plaintiff, the only surviving party, was served the notice of death via ECF and Mr. Plunkett was served the notice personally. *See* Doc. 61 p. 2.

Plaintiff failed to serve before the 90-day deadline set in Rule 25(a)(1). The timeliness of a Rule 25(a)(3) motion is measured by the service of two documents: first, the notice of death, *Roberts v. Rowe*, 89 F.R.D. 398, 400 (S.D. W. Va. 1981), and second, of the motion for substitution, *Miles, Inc.*, 810 F. Supp. at 1102 (finding substitution untimely where defendant "was not served until ... long after the ninety days required under Rule 25"). *See also Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296 (2d Cir. 1966) (measuring timeliness of motion for substitution by when served, not filed) (after notice of death filed April 27, 1964, a Rule 25(a)(1) motion dated July 27, 1964 (91 days later) and served the next day, was "two days late," not one).

Plaintiff also failed to serve before the 90-day (formerly 120-day) deadline set in Rule 4(m). Rule 25(a)(3) requires service pursuant to Rule 4 on non-parties, which in turn requires service on parties located within the United States within 90 days. Fed. R. Civ. P. 4(m). For foreign non-parties Rule 4(m) does not set a specific deadline for service. *Id.* But when "there is no express period of time within which the decedent's representative or successor must be introduced into the suit … the substitution must be within a reasonable time after defendant's death." *Ransom*, 437 F.2d at 512-13 (applying Texas law, before Rule 4(m) included a specific time).

The Court should apply the timeline set in Rule 4(m) as a reasonable benchmark. "Although Rule 4(m)'s time limit does not apply to service in a foreign country," it may guide the Court in "setting a reasonable time limit for service in a foreign country to properly manage a civil case." *Baja Devs. LLC*, 2009 U.S. Dist. LEXIS 83268, *3 (citing *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 458 (M.D. Pa. 2007) (imposing 120-day limit for foreign service) and *Montalbo v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) (applying 120-day limit "where the plaintiff had not even attempted to serve the foreign defendants")). *Accord Feliz*, 272 F.R.D. at 301-02; *Hydrentra HLP Int. Ltd. v. WGCZ S.R.O*, No. 2:15-cv-01250-LDG-NJK, 2015 U.S. Dist. LEXIS 147573, *2 (D. Nev.

Oct. 30, 2015); *Bowler v. Ferguson Enters.*, No. C11-6034 RJB, 2012 U.S. Dist. LEXIS 183044 (W.D. Wash. Dec. 31, 2012) (quashing defective service of process on foreign individual and dismissing). "It may well be that the provision for dismissal without prejudice under Rule 4(m) does not apply when service is attempted in a foreign country, but it does not follow that a court is left helpless when it wants to move a case along." *O'Rourke Bros. Inc. v. Nesbitt Burns, Inc.*, 201 F.3d 948, 952 (7th Cir. 2000) (*distinguishing Lucas v. Natoli*, 936 F.2d 432 (9th Cir. 1991)).

When a plaintiff fails to even attempt proper service on a foreign defendant, dismissal is proper under the Court's inherent authority to manage its cases. *Prudent Trust Co.*, 2015 U.S. Dist. LEXIS 62979, *4-5 (distinguishing *Lucas* as holding that the "service deadline in Rule 4(m) was inapplicable to *successful* service in a foreign country") (dismissing defendant on whom "Plaintiffs have not shown any attempt at *proper* service" after claiming to serve via email). "[T]he exemption from the 120-day time limit [under the former Rule 4(m)] for service in a foreign country does not apply where -- as here -- the plaintiff has not made a reasonable, good faith effort to attempt service abroad during the 120-day period." *Allstate Ins. Co. v. Funai Corp.*, 249 F.R.D. 157, 162 (M.D. Penn. 2008). Even absent a strict time limit for a Rule 25 motion for substitution, "an expectation of ordinary diligence presumably underlies each rule." *Cobell v. Jewell*, 802 F.3d 12, 24 (D.C. Cir. 2015). Failing to timely effectuate substitution can be fatal, and "Article III mootness ... can be triggered by inordinate delay[.]" *Id.*

By that standard, service now would be untimely, whether measured by either Rule 4(m)'s new 90-day timeline or its old 120-day timeline, because Plaintiff's delays and misguided attempts at service do not show good faith. The notice of death, filed and served on July 30, 2015, implicitly identified the personal representative to be named by certifying that it would be served on Mr. Plunkett personally that same day, and provided his Dublin address. Doc. 61 p. 2.

(He has lived at the same address since before Plaintiff and Nóirín's divorce, when he was Plaintiff's father-in-law.) Plaintiff waited until October 27, 2015, 89 days later, to file his brief Motion—a caption, four paragraphs, and a signature block. The Motion bore no certificate of service, suggesting that service was not yet even an afterthought. Plaintiff did not attempt to serve Mr. Plunkett until after the Court inquired about the missing certificate. Plaintiff then sought to serve through the Central Authority but changed course. An affidavit of service attests that on January 15, 2016, 169 days after the Rule 25 clock began to run, Plaintiff gave a process server the Motion to serve on Mr. Plunkett. Doc. The service he provided on January 18, 2016, three days later, was incomplete under Rule 25(a)(3) and invalid under the Hague Convention.

Modest extensions of the 90-day deadline in Rule 25(a)(3) may be granted when a motion to substitute has been timely filed but not perfected. *See Snyder v. Sec'y of HHS*, 69 Fed. Cl. 390 (2006) (granting timely filed motion for substitution that did not identify party to be substituted where executrix was not appointed until 138 days after suggestion of death), *rev'd on other grounds sub. nom Zatuchni v. Sec'y of HHS*, 516 F.3d 1312, 1315 (Fed. Cir. 2008). Specifically, Rule 6(b) allows an extension of the 90-day limit for "excusable neglect." *Russell v. City of Milwaukee*, 338 F.3d 662, 667-68 (7th Cir. 2003) (affirming denial of unexcused extension). But "departure from the requirements of the Federal Rules is not to be permitted routinely." *Anderson v. Republic Motor Inns*, 444 F.2d 87, 89 (3d Cir. 1971) (remanding to allow substitution where pre-trial memorandum indicating intent to substitute, but no motion for substitution, was timely filed). Generally, an extension of the Rule 25 90-day period requires a good-cause showing that timely compliance was impossible. *Dietrich v. Burrows*, 164 F.R.D. 220, 222 (N.D. Ohio 1995).

Such extensions may be proper when timely compliance is beyond the moving party's control. *Id.* For example, the Second Circuit has found a motion two days overdue "should have been

PATRICK PLUNKETT'S MOTION FOR RELIEF AND MOTION TO DISMISS

considered timely under Rule 6(b)(2)" where the moving party had to obtain court permission before moving to substitute and permission was granted less than a week before the filing deadline. *Staggers*, 359 F.2d at 296 (reversing dismissal). *See also Clark v. Universal Builders*, 409 F. Supp. 1274, 1282 (N.D. Ill. 1976) (granting plaintiffs' motion to substitute where plaintiffs "were unable to affect proper service upon the estate's executor only because leave to amend the complaint was improperly denied").

No such grounds exist here. "Personal service on the successor or representative is hardly an onerous burden where, as here, the administratrix had already been appointed when service occurred." *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985). When Plaintiff at last felt impelled to get the Motion into Mr. Plunkett's hands, it took just three days. Doc. 67. Only his neglect made him wait until the eleventh hour to file and the thirteenth hour to improperly serve.

### E.  The action against Mr. Plunkett should be dismissed for failure to state a claim because all claims pleaded against Nóirín Plunkett were personal and do not extend to Mr. Plunkett or the estate.

The Court may order substitution upon the death of a party only if "the claim is not extinguished." Fed. R. Civ. P. 25(a)(1). Plaintiff's claims do not survive under Massachusetts law, which controls under a proper conflict-of-law analysis.

> Rule 25(a) itself does not settle what claims shall survive the death of a party. *Commercial Solvents Corp. v. Jasspon*, 92 F. Supp. 20 (S.D.N.Y. 1950). Whether a claim abates or is subject to revival by a proper party is a question of substantive law and is not answered by the procedural Rule 25(a) alone. Where federal jurisdiction is based on the diversity of citizenship of the parties, it is clear that federal courts must look to state law to determine whether or not a claim survives.

*Asklar v. Honeywell*, 95 F.R.D. 419, 422 (D. Conn. 1982) (citation omitted). *Accord First Idaho Corp. v. Davis*, 867 F.2d 1241, 1242 (9th Cir. 1989) ("Rule 25(a) ... is purely procedural."); *Robertson*, 436 U.S. at 587 n.3. Oregon choice of law rules apply in diversity. *Bixby v. KBR, Inc.*, 895 F. Supp. 2d 1075, 1089 n.4 (D. Or. 2012) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)).

> [U]nder those rules in the absence of any conflict between the law of the forum state and of any other jurisdiction with an interest in the dispute, the law of the forum state governs, and in the presence of such a conflict, the law of the jurisdiction with the most significant relationship to the parties and their dispute governs.

*Id.* (*citing Erwin v. Thomas*, 264 Or. 454, 456-58 (1973)).

Massachusetts, where the estate is domiciled and where Nóirín was domiciled throughout the suit, and Oregon, Plaintiff's domicile, have conflicting laws determining the survival of claims after a defendant's death. Such laws are substantive, as they are "concerned with the legal rights of the parties ... [so] a choice of law analysis must be made." *Sims Snowboards, Inc. v. Kelly*, 863 F. 2d 643, 645 (9th Cir. 1988). Oregon provides that claims for injury "shall not abate upon the death of the wrongdoer" and the injured party's claim applies "against the personal representatives of the wrongdoer as if the wrongdoer had survived." Or. Rev. Stat. § 30.080. Plaintiff contends that substitution is effective under this statute and limits only his claim for "punitive damages from the decedent's estate." Motion p. 2 (*citing* Or. Rev. Stat. § 30.080).

But Massachusetts' more restrictive survival statute saves only certain specifically identified tort claims that do not apply in this case. It provides in full:

> In addition to the actions which survive by the common law, the following shall survive:—
> (1) Actions under chapter two hundred and forty-seven [i.e, actions for replevin];
> (2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person; (b) for consequential damages arising out of injury to the person and consisting of expenses incurred by a husband, wife, parent or guardian for medical, nursing, hospital or surgical services in connection with or on account of such injury; (c) for goods taken or carried away or converted; or (d) for damage to real or personal property; and
> (3) Actions against sheriffs for the misconduct or negligence of themselves or their deputies.

Mass. Gen. L. ch. 228, § 1. The Massachusetts statute preserves "actions which survive by the common law." *Id.* While contract claims generally survive the death of a party at common law,

PATRICK PLUNKETT'S MOTION FOR RELIEF AND MOTION TO DISMISS

tort claims do not. *Gasior v. Mass. Gen. Hosp.*, 446 Mass. 645, 649 (Mass. 2006). "At common law a right of action for tort does not survive the death either of the person injured or the wrongdoer." *Connors v. Newton Nat'l Bank*, 336 Mass. 649, 649 (Mass. 1958) (*quoting Putnam v. Savage*, 244 Mass. 83, 85 (1923)); *accord Sea-Land Servs. v. Gaudet*, 414 U.S. 573, 574 n.2 (1974) (discussing common-law rule that "tort actions died with the parties, either wrongdoer or injured party"). "If no survival is wrought by statute, the action must abate." *Connors*, 336 Mass. at 649 (*quoting Putnam*, 244 Mass. at 85). Thus the Massachusetts survival statute narrowly abrogated that common-law rule for only the handful of tort claims specified: those arising from certain physical injuries, conversion, or "for damage to real or personal property." Mass. Gen. L. ch. 228, § 1(2).

"From the outset the Massachusetts Supreme Judicial Court has been strict in its reading of the statute." *Cohen v. Lion Products Co.*, 177 F. Supp. 486, 490 (D. Mass. 1959). "And the holdings of that Court have been uniformly against the survival of actions where the gist of the conduct complained of was injury to the plaintiff's feelings." *Id.* (collecting cases). "We have held that actions seeking the vindication of personal rights, in the absence of a statute, do not survive while those seeking redress for damage to property rights do survive." *Sheldone v. Marino*, 398 Mass. 817, 819 (Mass. 1986) (*citing Metropolitan Life Ins. Co. v. DeNicola*, 317 Mass. 416, 419-20 (Mass. 1944)).

Three claims were pleaded against Nóirín: defamation, intentional infliction of severe emotional distress, and intentional interference with prospective economic relations. Doc. 1. A defamation claim seeks the vindication of personal rights beyond the scope of the enumerated claims in Mass. Gen. L. ch. 228. *See Walters v. Nettleton*, 59 Mass. 544, 544 (1850) ("an action for an alleged libel … by the common law, does not survive"); *Cummings v. Bird*, 115 Mass. 346, 346 (Mass. 1847) (libel does not survive although "it is alleged that the plaintiff lost a lucrative employment by reason of the charges made in the alleged libel").

An intentional interference claim also does not survive under Massachusetts law, because it seeks redress for pecuniary loss, not physical "damage to the person." *Ratner v. Noble*, 35 Mass. App. Ct. 137, 138-39 (Mass. App. Ct. 1993); *see* Restatement (Second) of Torts § 766 cmt. t (1979) ("The cause of action is for pecuniary loss resulting from the interference."); *cf. Dixon v. Amerman*, 181 Mass. 430, 431 (Mass. 1902), *Lee v. Kisk*, 222 Mass. 418 (Mass. 1915) (interference claim does not survive because damage is personal, not affecting real or personal property).

The Supreme Judicial Court of Massachusetts has found an emotional distress claim may survive the defendant's death, as it states damages of a physical nature. *Harrison v. Loyal Protective Life Ins. Co.*, 379 Mass. 212 (1979). But the claim would not survive in this case, under either Massachusetts or Oregon law, because it is predicated on the same set of alleged acts as the defamation claim. "An emotional distress claim based on the same facts as an unsuccessful libel claim cannot survive as an independent cause of action." *Leidholt v. L.F.P., Inc.*, 860 F.2d 890, 893 n.4 (9th Cir. 1988); *see also Correllas v. Viveiros*, 410 Mass. 314, 324 (Mass. 1991) (affirming summary judgment on defamation claim, and so on emotional distress claim) ("A privilege which protected an individual from liability for defamation would be of little value if the individual were subject to liability under a different theory of tort."); *accord Sovie v. Town of N. Andover*, 742 F. Supp. 2d 167, 176 (D. Mass. 2010) (granting summary judgment "on the defamation claim, as well as the associated intentional emotional distress claim arising from the alleged defamation"); *Yong Li v. Huffman*, Civ. A. No. 11-11557-NMG, 2012 U.S. Dist. LEXIS 91695, *9-10 (D. Mass. May 18, 2012) (defamation claim was dismissed along with claims for "tortious interference with advantageous relations, and intentional infliction of emotional distress" that "arise out of the same allegedly defamatory statements").

Therefore there is a conflict of law: while the Oregon survivorship statute would not bar Plaintiff's claims, none may be maintained against Mr. Plunkett under Massachusetts law.

To resolve a conflict of laws, "Oregon has adopted the choice of law rules of Restatement (Second) of Conflicts § 6 (1971) and the 'most significant relationship' test for tort choice of law set forth in section 145." *Portland Trailer & Equip., Inc. v. A-1 Freeman Moving & Storage, Inc.*, 182 Ore. App. 347, 358 (2002) (*citing Erwin*, 264 Ore. at 456 n.2).

> "(2) ...the factors relevant to the choice of the applicable rule of law include
> "(a) the needs of the needs of the interstate and international systems,
> "(b) the relevant policies of the forum,
> "(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> "(d) the protection of justified expectations,
> "(e) the basic policies underlying the particular field of law,
> "(f) certainty, predictability and uniformity of result, and
> "(g) ease in the determination and application of the law to be applied."

*Id.* (*quoting* Restatement (Second) of Conflicts § 6(2)).

> Section 145(2) identifies the contacts to be taken into account when applying the factors in section 6:
> "(a) the place where the injury occurred,
> "(b) the place where the conduct causing the injury occurred,
> "(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> "(d) the place where the relationship, if any, between the parties is centered."

*Id.* (*quoting* Restatement (Second) of Conflicts § 145(2)).

These factors significantly favor applying the survivorship statute of Massachusetts.

Plaintiff is domiciled in Oregon but conducts business online, all over the world. Doc. 1 ¶¶ 1-2. He alleges he was injured in diffuse locations, some in Oregon but most based in California: posts published on Twitter by Geek Feminism blog members from Wisconsin (Ashe Dryden) and San Francisco (Leigh Honeywell and Tim Chevalier) (*id.* ¶ 15); a blog post from the Ada Initiative, a now-defunct 501(c)(3) based in Australia and California (*id.* ¶¶ 16-17); a Geek

Feminism blog post, signed mostly by Californians (*id.* ¶ 18; *see* Doc. 16 p. 8). Plaintiff alleged these third-party posts were published and caused injury "across the internet" (*id.* ¶ 23), an inherently diffuse location. His claimed speculative injuries are also geographically diffuse; he did not apply to work at the Mozilla Corporation which, like almost every other company he alleges might not hire him, is headquartered in California. *Id.* ¶¶ 31-32. Oregon has no controlling interest in California-based statements or hypothetical California career opportunities.

Most of Plaintiff's allegations of conduct causing injury, if traceable to Nóirín, occurred in Massachusetts after Nóirín relocated. *See* Doc. 1 ¶¶ 16-19, 21 (alleging friend "stopped speaking with plaintiff" after Nóirín moved) & 22; *see also* Doc. 19 ¶ 3. Plaintiff admits that Nóirín's statements to medical personnel, police, and prosecutors on September 19, 2013 were privileged. Doc. 1 ¶¶ 10, 13; Doc. 14 p. 7. Nóirín left Oregon for Massachusetts immediately thereafter, on the morning of September 21, 2013. Doc. 1 ¶ 6; *see also* Doc. 1 ¶ 3. Massachusetts has a prevailing interest in proceedings against its domiciliaries for acts within its borders.

The factors identified in Restatement § 145(2)(c) are evenly split between Plaintiff in Oregon and Mr. Plunkett, an Irish national and domiciliary administering Nóirín's Massachusetts estate.

Plaintiff and Mr. Plunkett have no relationship except through the Massachusetts estate from which Plaintiff seeks to recover. *See* Doc. 63 pp. 1-2. That relationship, centered in Massachusetts, is subject to the state's courts and probate laws. *Id. See generally Marshall v. Marshall*, 547 U.S. 293, 315 (2006) ("The administration of decedents' estates typically is governed by rules of state law and conducted by state probate courts.") (Stevens, J., concurring). Massachusetts has a strong interest in the efficient resolution of the estate without litigation over extinguished claims.

Therefore Massachusetts' law barring the claims governs this case and it should be dismissed.

Dated: February 8, 2016                    Respectfully submitted,

                                           /s/  Dan Booth
                                           Dan Booth

                                           *Counsel for Patrick Plunkett*

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document by using the Court's ECF system on this 8th day of February, 2016, thereby causing a true copy to be served electronically upon counsel of record for each other party and for non-party Patrick Plunkett.

                                           /s/  Dan Booth