Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
(503) 351-2327
Fax (503) 914-6665
bwnlaw@gmail.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| MICHAEL G. SCHWERN, | No. 3:14-CV-00146-PK |
| Plaintiff, | **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS** |
| v. | **Oral Argument Requested** |
| PATRICK PLUNKETT, | |
| Personal Representative of the Estate of Nóirín Plunkett, | |
| Defendant. | |

Plaintiff Michael G. Schwern, through counsel, respectfully submits this response to defendant Patrick Plunkett's motion for relief under Fed. R. Civ. P. 60(b)(1) and to dismiss under Fed. R. Civ. P. 12(b)(2), 12(b)(5), and 12(b)(6) (#68). Plaintiff requests oral argument. The Court should deny defendant's motion both because it is barred by the stay of this action obtained on the motion of defendant's predecessor in interest and because it lacks merit.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 1

## I. THE COURT'S STAY OF ALL PROCEDINGS IN THIS CASE
## DOES NOT APPLY ONLY WHEN IT SUITS DEFENDANT'S PURPOSES.

In an opinion and order filed on August 15, 2014 (#38), this Court granted former defendant Nóirín Plunkett's motion to stay all proceedings in this case (#29) pending resolution of defendant's interlocutory appeal to the Ninth Circuit from the Court's order denying defendant's anti-SLAPP motion to dismiss the complaint. In 2015, when plaintiff moved for sanctions against defendant and simultaneously moved to lift the stay for the limited purpose of adjudicating the sanctions motion (#44), defendant ardently opposed lifting the stay (#57). The Court denied plaintiff's motion and issued an opinion and order keeping the stay in effect (#60).

Defendant Patrick Plunkett now asks the Court, in effect, to disregard that same stay. Specifically, defendant asks the Court to grant his motion to dismiss the case — a more thoroughgoing purpose than that for which plaintiff sought to lift the stay, which was simply to address the issue of possible sanctions against defendant for alleged litigation misconduct. Defendant does not, however, provide any legal analysis that would support lifting the stay at this time. Indeed, defendant does not even explicitly request that the stay be lifted.

The stay order, on its own terms, does not admit of any exceptions save for a requirement that the parties update the Court on the progress of the appeal three times a year. It certainly does not permit the adjudication of dispositive motions. To permit defendant to litigate the survival of this action while plaintiff is foreclosed from taking any affirmative steps to prosecute it would be an unfair and unwarranted turn of events. *See In Re Philadelphia Newspapers LLC*, 410 B.R. 404, 406 (Bankr. E.D.Pa. 2009) (court opining with regard to the reciprocity of an injunction that "it does seem to me that what is good for the goose is definitely good for the gander"). Barring a showing by defendant as to why the stay should now be disturbed when defendant argued so vigorously to the contrary the last time the matter arose, the Court should, at a minimum, defer

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 2

the adjudication of defendant's pending motion until after the resolution of the appeal.

## II. PLAINTIFF PROPERLY AND TIMELY SERVED DEFENDANT WITH THE MOTION FOR SUBSTITUTION OF PARTIES.

Plaintiff begins where defendant leaves off, with the issue of timeliness. It bears significant emphasis that the timing of plaintiff's actions in this case was determined in large part by the effect of communications from defendant's counsel. For that reason, before responding to defendant's arguments, plaintiff supplements the factual record.

Plaintiff's counsel learned from plaintiff on July 29, 2015, that Nóirín Plunkett had died. (Plaintiff had learned about Ms. Plunkett's death from an internet tribute to her that same day.) Plaintiff's counsel immediately wrote to defendant's counsel to express his condolences. On the next day, July 30, plaintiff's counsel sent defendant's counsel the below email setting forth a plan for proceeding with the case:

> I write to discuss the future of our lawsuit in view of the tragic death this week of defendant Nóirín Plunkett. Let me begin by reiterating formally what I told you informally yesterday: Mr. Schwern and I are both deeply saddened by Ms. Plunkett's death. We send our best wishes to all those who cared for her. I have lost several clients to death while cases were pending over the years. It never gets easier. I hope both of you have access to good emotional support in this time.
>
> After consulting in depth with Mr. Schwern, I must inform you that we do intend to proceed with the lawsuit. We can leave issues of proof for another day when the case is back before the District Court in the appropriate posture. My concern for the moment is with procedure.
>
> Our case in diversity is governed by Oregon substantive law. ORS 30.080 and ORS 30.100 jointly provide that when an alleged tortfeasor dies while an action for a personal injury is pending, the plaintiff may move to substitute the personal representative of the decedent as a defendant. See also FRCP 25(a)(1)-(2). The only substantive limitation on the action thereafter is that the plaintiff may not recover punitive damages from the decedent's estate. ORS 30.080. Accordingly, Mr. Schwern will be moving to substitute Ms. Plunkett's personal representative, when one is named, as the defendant in this case, but he will abandon his pursuit of punitive damages.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS – Page 3

ORS 30.090 provides that if a personal representative is not named within 60 days of the decedent's death, the plaintiff may move the court to appoint an administrator. FRCP 25(a)(1) requires the court to dismiss the action if the plaintiff does not move to substitute the proper party within 90 days of service of a statement of a party's death. Therefore, there is a relatively narrow window within which I must take action. For now, I will await the appointment of a personal representative in accordance with the terms of Ms. Plunkett's will if she had one and under general Massachusetts law if she did not. On September 28, however, if no personal representative has been appointed, I will take action to see that an administrator is appointed. That is because I must move to substitute the proper party defendant by October 27.

As for the pending appeal, FRAP 43(a)(1) governs. That rule provides that the personal representative may be substituted to prosecute the appeal and that, if no personal representative is named, the Court of Appeals should be informed of the party's death and will then take the action it considers appropriate. Similarly, FRCP 25(a)(2) provides that the District Court should be notified of a party's death.

We have a deadline coming up on August 7 for a formal joint status report. I will be on vacation with my family August 6-9, so I would like to take initial action before that deadline. I propose that we file a joint status report in the District Court as soon as practicable informing the court that Ms. Plunkett has died, that Mr. Schwern intends to continue with the lawsuit, and that when a personal representative has been named he will move to substitute that person as the defendant. The status report, which is required by the court's order staying the proceedings during the pendency of the appeal, should suffice for compliance with FRCP 25(a)(2).

As for the Court of Appeals, I do not think there is the same urgency with noting Ms. Plunkett's death. We can probably wait until the question of a personal representative has been sorted out. If you feel differently, of course, you should feel free to notify the Ninth Circuit of her death earlier.

One final note: Ms. Plunkett's estate has a duty to preserve evidence in its possession or control, including electronic evidence, that is or may become relevant to the issues in this litigation. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216-218 (S.D.N.Y. 2003). I trust that you will inform the personal representative, when one is named, of the importance of complying with this duty. I also trust that you will each instruct any potential witness, records custodian, or other interested person with whom you have contact of this duty insofar as it applies to them.

I wish sincerely that these were not the circumstances under which I were writing you. I appreciate your professionalism at this difficult time for all of us. And I wish you both very well.

    Several weeks passed. Eventually, on September 18, plaintiff's counsel asked defendant's

counsel:

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS – Page 4

> Sir, has it become clear yet whether you are going to be representing Ms. Plunkett's estate?
>
> If not, who will be?
>
> If so, will you agree to accept service of any documents (e.g. an amended complaint) that any source of law might otherwise require me to serve on the defendant personally?
>
> Is Ms. Plunkett's father going to serve as the personal representative of her estate (as we would call it in Oregon -- you might refer to this role as an executor or using some other term in Massachusetts)?
>
> If not, who is?

Defendant's counsel responded on September 21 that he was not administering Ms. Plunkett's estate and that he did not yet know whether he would be representing the estate's representative in this lawsuit. Plaintiff's counsel replied that defendant's counsel should "be aware that, if no personal representative has been selected by September 28, I will at that point move the court to appoint one."

Defendant's counsel wrote back on September 22, asking plaintiff's counsel not to take hasty action.

> I appreciate your sense of urgency. I have a bit more information that may make it worth briefly postponing any motion for substitution, in hopes that the motion can be more quickly resolved.
>
> It's my understanding that no personal representative has yet been named. I believe Nóirín's father Patrick Plunkett will be the personal representative of the estate, and I presume that your motion would be to appoint him, but please let me know if you had other intentions. Though I have not yet been retained by him, I expect I will be.
>
> Mr. Plunkett is out of the country and out of phone and email contact until October 5. When he returns to Ireland I expect to resolve my engagement in short order. If you'll postpone your motion until October 14, we should then be in a better position to let you know who will be administering the estate, whether we can accept service, and whether the motion might be assented-to or joint. Please let me know if that's acceptable. We filed and served the statement noting Nóirín's death on July 31 so if my math is correct, you have until October 29 to move for substitution pursuant to Rule 25(a)(1).

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 5

Plaintiff's counsel agreed the same day to wait.

On October 20, defendant's counsel let plaintiff's counsel know that Mr. Plunkett had indeed retained him to represent Ms. Plunkett's estate in this action. On October 26, plaintiff's counsel inquired whether the estate would move to be made a substitute defendant. On the same day, defendant's counsel for the first time stated that the estate would not. Plaintiff's counsel filed the motion for substitution of counsel the next day, October 27.

Based on the foregoing recitation of the facts, defendant cannot now be heard to invoke Fed. R. Civ. P. 25(a)(1)'s 90-day limit on making a motion to substitute a party in the place of a deceased party. Defendant's counsel, through his September 22 email, actively procured plaintiff's counsel's forbearance, explicitly holding out the prospects of acceptance of service and an assented-to or joint motion for substitution. More importantly, even after plaintiff filed the motion for substitution, in an October 30 email sent to the Court's deputy clerk as well as to plaintiff's counsel, defendant's counsel stated:

> There's no need for any agita over a looming deadline. Mr. Plunkett has no objection to service made within a reasonable time, and that time is still a month away.
>
> Rule 25 requires that the motion to substitute be "made" within 90 days of the notice of death, and by my count, the motion was filed on day 88. The Rule does not state that *service* of the motion is also required within 90 days. Under Rule 25(a)(3), service is required as provided in Rule 4, so I'd refer there to determine a reasonable time. Rule 4(m) allows service within 120 days. The amended Rule 4, which will limit that to 90 days, won't be effective until December 1, after the 120 days have passed.

In sum, defendant, through the actions of his counsel — his agent — stated unequivocally that the pertinent time frame was not the period between the notice of death and the *filing* of the motion for substitution, but rather the period before the *service* of that motion. Defendant has effectively waived any conflicting argument. *See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-705, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)

(holding that "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." Thus, the proper question for this Court to resolve if it determines to hear defendant's motion on its merits is not how long it took for plaintiff to file his motion for substitution of parties, but rather whether plaintiff either took too long to serve the motion or served it in some improper way.

Plaintiff returns to the factual narrative. On October 30, plaintiff's counsel invoked the Hague Convention process for service of process abroad by mailing two copies of the motion to dismiss along with Form USM-94, requesting service on Patrick Plunkett, to Ireland's Central Authority. Unfortunately, the Central Authority did not take any apparent action in response to plaintiff's request for service. Indeed, the Central Authority did not respond to plaintiff's counsel's subsequent attempts to get an update on the status of service of the motion.

Faced with this lack of activity and mindful of his responsibility to effect service within a reasonable time (*see* Motion for Relief and to Dismiss at 5, citing authorities), plaintiff's counsel sought to procure service through a solicitor's office. On January 4, counsel asked his paralegal to begin researching cost-effective alternatives. Within two weeks, Andrew Weir, a solicitor based in Northern Ireland, was able to effect personal service. *See* Affidavit of Service (#67). Mr. Weir was recruited through Professional Information Agency Ltd, whose website can be viewed at http://www.processserversireland.com/. As PIA's website makes clear, Mr. Weir's firm is qualified to serve legal documents in the Republic of Ireland as well as in Northern Ireland. Plaintiff respectfully submits that, in light of all the relevant facts and circumstances, including the Central Authority's unexplained delay, he accomplished actual and legally binding service of process within a reasonable time.

Defendant's only remaining objection is to the alleged insufficiency of that process — to

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 7

wit, that plaintiff did not include a notice of hearing with his motion. That choice on plaintiff's counsel's part was deliberate, but far from fatal to plaintiff's case. There are two reasons why no notice of hearing could be served. Preliminarily, having a hearing on the motion for substitution would be inconsistent with the stay of all proceedings, as set forth in Section I, *supra*. But even more to the point, as a factual matter, there *was* no hearing on plaintiff's motion scheduled at the time plaintiff made the motion or at the time plaintiff's counsel initially submitted the motion to the Central Authority for service. This is unsurprising, given that on October 29 defendant's counsel informed the Court's deputy clerk by email that "Mr. Plunkett will not oppose the motion, as long as it is properly served on him consistent with Rule 25."

     Thus, by defendant's own admission at the time, there was no need for a hearing — and, indeed, the Court *granted* the motion without a hearing on November 3 (#64) — so how could plaintiff have served defendant with a notice of a nonexistent hearing? None of the authorities cited by defendant to the contrary are controlling in this proceeding. The Court should therefore conclude that the absence of a notice of hearing with the motion for substitution of parties was not a jurisdictional flaw.

### III. THIS ACTION SURVIVES NÓIRÍN PLUNKETT'S DEATH.

     As to the survival of the action, plaintiff has already set forth the core of his legal analysis in the motion for substitution (#63). Defendant's arguments in the motion for relief and to dismiss do not compel a different conclusion. Plaintiff agrees that this Court is bound to apply Oregon's choice of law rules. *See* Motion for Relief and to Dismiss at 15-16, citing *Bixby v. KBR, Inc.*, 895 F. Supp. 2d 1075, 1089 n. 4 (D. Or. 2012). Plaintiff takes issue, however, with defendant's application of those rules.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 8

When Oregon's substantive laws conflict with another state's substantive laws that might govern a tort action — which is the case here — the Court has to decide which state has the "most significant relationship" with the action and the parties. *Rice v. UPS*, 43 F. Supp. 2d 1134, 1140-1141 (D. Or. 1999); *Erwin v. Thomas*, 264 Or. 454, 456-457, 506 P.2d 494 (1973). To make that decision, the Court is guided by four factors, which may be stated as the answers to four questions: (1) Where did the injury occur? (2) Where did the conduct occur? (3) What are the parties' domiciles, nationalities, places of incorporation, or places of business? and (4) Where is the parties' relationship centered? *Casey v. Manson Constr. & Engineering Co.*, 247 Or. 274, 279, 428 P.2d 898 (1967).

These factors, examined in the aggregate, require the application of Oregon law, not Massachusetts law. First, plaintiff, who has lived at all relevant times in Oregon, was injured in Oregon, his chosen home and the place from which he seeks to practice his profession. The first factor thus weighs in his favor. Second, Nóirín Plunkett engaged in tortious behavior toward plaintiff from various places, known and unknown to plaintiff. This factor arguably weighs in defendant's favor, though plaintiff notes that *not* all, or even necessarily most, of the behavior of which he complains occurred in Massachusetts. Third, the parties are or were each domiciled in a different state. This factor is neutral. Fourth and finally, the parties' relationship *as described in the complaint* was squarely centered in Oregon. Oregon is the place where the parties lived together during their marriage, where they divorced, and where Ms. Plunkett began to make her false accusations of sexual violence against plaintiff. This factor weighs strongly in plaintiff's favor. Defendant's citations to law governing the administration of Massachusetts estates are inapposite, because the estate is only a stand-in for the underlying tortfeasor. Oregon law, permitting survival of plaintiff's claim, should govern.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 9

## CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion.

RESPECTFULLY SUBMTTED February 22, 2016,

/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Plaintiff

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RELIEF AND TO DISMISS –
Page 10