Lake James Hammond Perriguey, OSB 983213
lake@law-works.com
Law Works LLC
1906 SW Madison Street
Portland, OR 97205
503-803-5184
Fax 503-334-2340

Dan Booth, MA Bar #672090 (admitted *pro hac vice*)
dbooth@boothsweet.com
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
617-250-8602
Fax 617-250-8883

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **MICHAEL G. SCHWERN**, | Case No. 3:14-cv-00146-PK |
| **Plaintiff**, | |
| | **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY FEES AND BILL OF COSTS** |
| v. | |
| **PATRICK PLUNKETT**, personal representative of the estate of Nóirín Plunkett, | **Noted on under advisement calendar for April 19, 2017** |
| **Defendant**. | |

Pursuant to LR 54-3(b) and this Court's March 1, 2017 order, Doc. 95, defendant Patrick Plunkett respectfully submits this reply in support of his Motion for an Award of Attorney Fees, Doc. 87 ("Fees Motion"), and his Bill of Costs, Doc. 88. Plaintiff Michael Schwern's objections, Doc. 96, state no valid grounds for denying a full award of the fees and costs incurred.

**I. Mr. Plunkett is entitled to an award as the prevailing defendant.**

"A defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs." Or. Rev. Stat. § 31.152(3). As Mr. Plunkett is a defendant, and he prevailed under that statute, he is entitled to an award. Doc. 89, 90.

Mr. Schwern objects that the Fees Motion "presupposes that Mr. Plunkett is, in fact, 'the substituted party.'" Doc. 96 p. 3. No presupposition is needed. Mr. Schwern moved to substitute Mr. Plunkett as the defendant in place of his late daughter Nóirín Plunkett, "pursuant to Fed. R. Civ. P. 25(a)(1)." Doc. 63 p. 1. The Court granted his motion. Doc. 64. "The substituted party steps into the same position as the original party" after substitution under Rule 25(a)(1). *Hilao v. Estate of Marcos*, 103 F.2d 762, 766 (9th Cir. 1996).[1]

Mr. Schwern further objects that judicial estoppel principles bar an award to the prevailing defendant because Mr. Plunkett contended that he was not properly served. Doc. 96 pp. 2-4. The objection is unfounded. For a court to apply judicial estoppel, "a party's later position must be 'clearly inconsistent' with its earlier position." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Further, the party must have "succeeded in persuading a court to accept that party's earlier position." *Id.* at 750-51; *accord Casa Del Caffe Vergnano S.P.A. v. Italflavors San Diego,*

---

[1] Mr. Schwern's position that judicial estoppel should lead the Court to disregard this statement in *Hilao* is ironic and unavailing. *See* Doc. 96 pp. 3-4 (*citing* Doc. 87 p. 3). *Hilao* was the only case he cited in his motion to substitute when discussing "the effect of a substitution of parties under Fed. R. Civ. P. 25(a)(1)." Doc. 63 p. 2. Because the Court granted that motion, the relevance of judicial estoppel is to bar any inconsistent position by Mr. Schwern that *Hilao* does not govern.

*LLC*, 816 F.3d 1208, 123 (9th Cir. 2016) ("we have restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position") (internal quotations and citations omitted). Because judicial estoppel does not apply to arguments that are not clearly inconsistent, or that no court adopted, it does not apply here.

Mr. Plunkett made no argument inconsistent with recognition of his prevailing defendant status. He never denied that he *had been* made a substitute party. *See* Doc. 68 p. 6 (contending, "A purported substitute defendant may move to dismiss for failure to serve, even after substitution is granted."). He argued instead that he *should not have been*. *Id.* pp. 2-4; Doc. 87 pp. 5 & 6. That position was not contrary to his current status as a defendant who prevailed.[2] *See generally CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1651 (2016) ("a defendant need not obtain a favorable judgment on the merits in order to be a 'prevailing party'").

The Court never adopted Mr. Plunkett's argument that failure to serve required dismissal. After substitution, the Court did accept *Mr. Schwern's* concession that "personal service had not yet been perfected on Patrick Plunkett." Doc. 65 p. 1; *see* Doc. 66 (recognizing that service had not been perfected). Mr. Plunkett then moved to vacate the order of substitution. Doc. 68 pp. 6-15 ("Motion to Vacate"); *see* Doc. 87-1 ¶ 13. The Court denied his Motion to Vacate without prejudice pending the outcome of the appeal. Doc. 73.[3] The Court never addressed the merits of the Motion to Vacate, so it never adopted any of Mr. Plunkett's arguments—none of which were inconsistent with finding him the prevailing defendant.

_____

[2] Even if Mr. Plunkett were not a party to the action, and so not the prevailing defendant, Nóirín would be; and Mr. Plunkett is the named representative of Nóirín's estate. Doc. 63 p. 2. In that capacity, he is entitled to recover all that Nóirín stood to recover for prevailing under Or. Rev. Stat. § 31.152(3). *See* Doc. 87 p. 4. Mr. Schwern does not and cannot deny that.

[3] After that denial, at Mr. Schwern's request, the Court scheduled and repeatedly rescheduled a further hearing on the Motion to Vacate. Doc. 75, 79, 83, 84. If the motion was then pending, it was denied as moot after the Ninth Circuit mandate issued. Doc. 86, 89, 90.

**II. Mr. Plunkett is entitled to an award of all reasonable fees and costs incurred.**

Mr. Schwern objects that the award should be limited to fees "fairly attributable to work on the special motion to strike." Doc. 96 p. 5. "The statute contains no such limiting provision[.]" *Card v. Pipes*, No. 03-6327-HO, 2004 U.S. Dist. LEXIS 32157, *3 (D. Or. June 22, 2004). The relevant precedent is entirely to the contrary. An argument "that time spent on issues beyond the Special Motion to Strike itself is not compensable … has been rejected previously by this court as lacking merit." *Accuardi v. Fredericks*, No. 3:13-cv-01825-ST, 2014 U.S. Dist. LEXIS 55382, *11 (D. Or. Apr. 22, 2014) (*citing Higher Balance, LLC v. Quantum Future Grp., Inc.*, No. 08-233-HA, 2009 U.S. Dis. LEXIS 51836, 2009 WL 1743210, *5 (D. Or. June 18, 2009), *Schumacher v. City of Portland*, CV-07-601-MO, 2008 U.S. Dist. LEXIS 5443, 2008 WL 219603, *4 (D. Or. Jan. 23, 2008), *and Card*). All fees and costs claimed were reasonably incurred and should be compensated.

Mr. Schwern specifically objects to time Erin Olson spent on communications with the District Attorney's office (1.5 hours) and in response to mailings from Mr. Schwern's counsel (3.5 hours), and time Dan Booth spent on a possible settlement (1.6 hours) and on preserving evidence (1.5 hours). Doc. 96 p. 5 (citing Doc. 87-5 & 87-9). This objection carries no weight because Mr. Schwern precipitated all that work. His threats to seek sanctions against Nóirín absent a settlement in early 2015 instigated most of the identified expenditures. *See* Doc. 96 p. 6 & Doc. 46 p. 7.[4] His complaint's allegations about communications with two Deputy District Attorneys sparked Ms. Olson to contact their office. Doc. 1 ¶ 12; Doc. 87-9 p. 1. And Mr. Booth's work preserving evidence was entirely at Mr. Schwern's behest. *See* Doc. 71-2; Doc. 87-1 ¶ 19. All of these steps "would have been undertaken by a reasonable and prudent lawyer to advance or protect [the] client's interest in the pursuit of a successful recovery." *Nadarajah v. Holder*, 569 F.3d

---

[4] Mr. Booth spent 1.5 hours on a possible settlement in April 2015, *see* Doc. 87-1 ¶¶ 5-7, then 0.1 hours on Mr. Schwern's October 2015 settlement proposal to Mr. Plunkett, *see* Doc. 87-4.

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY FEES AND BILL OF COSTS

906, 923 (9th Cir. 2009) (*quoting Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982)). They are all reasonably compensable.

**III. Mr. Plunkett is entitled to an award of counsel's time at the rates charged.**

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992); *accord Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-cv-00879-AC, 2016 U.S. Dist. LEXIS 126335, *62 (D. Or. Sept. 16, 2016) ("party requesting fees has the burden of producing 'satisfactory evidence'" under Or. Rev. Stat. § 20.075(2)(c)). Mr. Plunkett satisfied his burden of production with satisfactory evidence that each attorney's hourly rate was reasonable and "within the range of prevailing rates in the relevant market." Doc. 87 pp. 7-8; *see* Doc. 87-1 & 87-5 to 87-13.

"The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98. Mr. Schwern has not met that burden.

As rebuttal evidence to the rates charged, Mr. Schwern presents only the fact that Ms. Olson's rates, which he concedes "were entirely reasonable," were lower than what Mr. Booth charged. Doc. 96 pp. 5-6. The relevant factor is not simply the rates of the prevailing defendant's other attorneys, but "[t]he fee customarily charged in the locality for similar services." Or. Rev. Stat. § 20.075(2)(c).[5] Mr. Schwern does not dispute that "Ms. Olson charged significantly less than the prevailing market rates." Doc. 87 p. 9. One attorney's below-market rate is not a ceiling on other attorneys' reasonably compensable rates. Mr. Schwern also does not deny that Mr. Booth's

---

[5] Mr. Schwern recognizes that the Or. Rev. Stat. § 20.075 factors govern the Court's discretion in awarding fees. Doc. 87 p. 2; Doc. 96 p. 7.

rate is "within the upper range charged by attorneys with similar experience in similar cases in Portland." *Id.* It is between the 75th and 95th percentile of the rates charged by comparable Portland attorneys, as set forth in the most recent Oregon State Bar economic survey. *Id.* The Court acts within its discretion in awarding fees at such rates. *See, e.g., Kraft v. Arden*, No. CV-07-487-PK, 2009 U.S. Dist. LEXIS 19445, *19-21 (D. Or. Mar. 9, 2009).

Mr. Schwern further takes issue with the Plunketts for employing "out of state counsel," namely Mr. Booth, "instead of hiring another Oregon attorney." Doc. 96 p. 6. "No case law supports such an argument, and this Court declines to create a new rule that plaintiffs must exhaust local markets before hiring an out-of-town lawyer." *Santiago v. Equitable Ascent Fin'l*, No. C 11-3158 CRB, 2013 U.S. Dist. LEXIS 97762, *15 (N.D. Cal. July 12, 2013) (*citing Johnson v. Credit Int'l, Inc.*, 257 F. App'x 8, 11 (9th Cir. 2007)). The Plunketts were out-of-state defendants: Nóirín engaged Mr. Booth more than eighteen months after moving across the country to live in Massachusetts, and Mr. Plunkett re-engaged Mr. Booth from his home town of Dublin, Ireland. Doc. 87 p. 11. Neither knew of available Oregon counsel with the requisite experience in defamation and anti-SLAPP litigation. *Id.* When they retained Mr. Booth, Nóirín faced threats of sanctions and Mr. Plunkett faced substitution, imminent exigencies that warranted their choices to prioritize relevant experience over proximity to the Court, and to avoid a costly long-distance search for a Portland attorney.[6] "Defendant was not required to employ less costly local counsel to litigate the case to be entitled to a reasonable award of attorney fees. The evidence submitted by defendant established that his attorneys had reasonable hourly rates for Oregon." *Robinson v. DeFazio*, No. A156582, 284 Ore. App. 298, 2017 Ore. App. LEXIS 276, *14-15 (Ore. Ct. App. Mar. 1, 2017) (finding trial court's award of fees under Or. Rev. Stat. § 31.152(3) abused its

_____

[6] Also, Mr. Booth's knowledge of the case further justified Mr. Plunkett's choice to retain him.

discretion in reducing the "requested fees based, in part, on its own estimation that defendant could have found less costly counsel in Southern Oregon").

Mr. Schwern objects that Lake Perriguey's fees, simply because he served as local counsel, were all "unnecessarily duplicative." Doc. 96 p. 6. Counsel strived to avoid any redundancy, and Mr. Perriguey's modest expenditure of time was necessary to comply with the requirement that local counsel "meaningfully participate in the preparation and trial of the case." LR 83-3(a)(1). "If there is some doubt, however, on whether local counsel should participate in some aspect of the case or court proceeding, counsel should err on the side of participation." Magistrate Judge John V. Acosta & Richard Vangelisti, "The Integral Role of Local Counsel in the District of Oregon," *For the District of Oregon*, Vol. XVII, No. 2, p. 1 (Fed. Bar Ass'n Oregon Chapter) (Summer 2013), https://oregonfederalbarassociation.files.wordpress.com/2013/10/fba-summer-newsletter_final.pdf. Mr. Schwern's objections provide no principled basis for any reductions.

**IV. The Or. Rev. Stat. § 20.075 factors support a full award of the fees requested.**

Mr. Schwern's objections under specific Or. Rev. Stat. § 20.075 factors are unavailing.[7]

No factual findings are needed as to what conduct "gave rise to the litigation" under Or. Rev. Stat. § 20.075(1)(a). *See* Doc. 96 p. 7. The Ninth Circuit settled the issue: Mr. Schwern sought to violate Nóirín's anti-SLAPP immunity. Doc. 86-1 pp. 7-8. "The parties do not dispute that Schwern's claims arise out of expressive activity protected by the statute." *Id.* p. 8.

Mr. Schwern erroneously asserts that under Or. Rev. Stat. § 20.075(1)(b), "the court may consider only conduct during the proceeding." Doc. 96 pp. 7-8. His focus is misdirected; this factor concerns the reasonableness of the parties' pleadings, not of their "litigation conduct." *See*

---

[7] Or. Rev. Stat. § 20.075(1)(a) and (b) are the only factors that Mr. Schwern contends weigh against the Fees Motion and Bill of Costs. Doc. 96 pp. 7-8; *see* Doc. 87 pp. 5-10 (applying other factors). The Court may allow the award based on each undisputed factor, as it need only resolve disputed claims. *See McCarthy v. Oregon Freeze Dry, Inc.*, 327 Ore. 185, 189 (Ore. 1998).

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY FEES AND BILL OF COSTS

*Niman & Niman*, 206 Or. App. 400, 420 (Or. Ct. App. 2006) (finding, under this factor, a focus on the parties' conduct "erroneously conflated the inquiry under paragraph (1)(b) with that under paragraph (1)(a)"). Mr. Schwern's claims were unfounded, so they were objectively unreasonable. *See* Doc. 86-1 p. 5 (Oregon anti-SLAPP statute provides means for "dismissing unfounded lawsuits") (*quoting Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 814 (Or. Ct. App. 2016)).

Further, his contention that his claims were sufficiently reasonable under Or. Rev. Stat. § 20.075(1)(b) applies the wrong legal standard, relying on inapposite cases construing the standard for wholly meritless or frivolous claims under Or. Rev. Stat. § 20.105(1). Doc. 96 p. 8 (citing *Dimeo v. Gesik*, 195 Or. App. 362, 371 (Or. Ct. App. 2004) and *Mattiza v. Foster*, 311 Ore. 1, 8 (Ore. 1990)). It is improper to "equate the standards for a frivolous claim with the relative assessment of objective reasonableness in determining the amount of fees to be awarded." *Beaverton Sch. Dist. 48J v. Ward*, 281 Or. App. 76, 84 (Or. Ct. App. 2016) (distinguishing *Mattiza*). The statute itself differentiates the "objective unreasonableness of the claims" from "meritless claims." Or. Rev. Stat. §§ 20.075(1)(b), (d). Finding unreasonableness does not require a showing that the claims were "entirely devoid of legal or factual support" under *Dimeo* and *Mattiza. See* Doc. 96 p. 8.[8]

---

[8] Mr. Schwern failed to meet even the minimal standards of those inapposite cases. "[A] position is meritless if it is not supported by the law *as applied to the facts.*" *Mattiza*, 311 Ore. at 8 n. 10 (Ore. 1990) (emphasis in original). As noted in *Dimeo*, "it is a rare case in which a party that has even some evidence to support the claim can be said to have no 'objectively reasonable basis' for doing so." 195 Or. at 371. Mr. Schwern failed to present even some evidence to support the inferences needed to sustain his claims. "[T]he evidence must lend at least some support to each element of the claim." *Lenn v. Bottem*, 221 Or. App. 241, 249 (Or. Ct. App. 2008) (*citing Dimeo*, 195 Or. App. at 371). It did not, as the Ninth Circuit found. "Schwern offers no evidence that Plunkett ever spoke with any of the individuals who posted on Twitter about his arrest or that she communicated with any of the organizations that issued statements on their websites." Doc. 86-1 p. 9. Likewise, "Schwern offered no evidence that West ever repeated Plunkett's alleged statement to anyone." *Id.* p. 10. "Absent any evidence that Plunkett was the source of the online commentary," *id.*, it was unreasonable to bring and maintain the claims. *See also* Doc. 21 p. 19 ("Schwern offers no competent evidence" that Nóirín made the purported statements to third parties). No evidence is not enough. *See Handy v. Lane Cty.*, 360 Or. 605, 623-26 (2016).

Mr. Schwern's suggestion that discovery might have bolstered his case also fails. *Id.* p. 9. As pleaded, his claims rested on a chain of inferences for which "a 'reasonable trier of fact' could not find" support. Doc. 86-1 p. 10. Also, Mr. Schwern chose not to take advantage of the mechanisms available to develop the record further. He did not file a motion for specified discovery under Or. Rev. Stat. § 31.152(2) before the Court's findings on Nóirín's motion to strike. To meet his burden of production under Or. Rev. Stat. § 31.150(3), he instead relied solely on his averments in the complaint, online statements referenced in the complaint, and declarations by himself, his counsel, and "an old friend." Doc. 1 ¶ 22; *see* Doc. 15, 17 & 19. *See Niman & Niman*, 206 Or. App. at 419-20 (finding no error in trial court's application of Or. Rev. Stat. § 20.075(1) (a) when "the trial court was never afforded the opportunity to render a finding" on the grounds raised on appeal). It is too late for Mr. Schwern to argue that the record is too "circumscribed," speculate that his evidentiary showing "might very well have been enhanced" by discovery, or wonder on "what might well have been." Doc. 96 pp. 7 & 9. Idle, *post hoc* speculation cannot replace timely motions for discovery or "fill in the gaps in his evidence." Doc. 86-1 p. 10 (*quoting Handy*, 360 Or. at 626).

Admitting his "failure to achieve personal service on Mr. Plunkett," Mr. Schwern posits that it was not unreasonable to maintain suit against a substitute defendant he had not served because he tried to. Doc. 96 p. 9. His meager attempts to serve were themselves unreasonable. Mr. Schwern does not deny that he never served Mr. Plunkett the requisite "motion to substitute, *together with a notice of hearing*." Fed. R. Civ. P. 25(a)(3) (emphasis added); *see* Doc. 68 pp. 8-9. He does not deny that service in Ireland must comply with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, and that such compliance requires service either by a solicitor in Ireland or through Ireland's Central Authority. *See id.* pp. 9-10 (*citing GCUI-*

*Employer Ret. Fund v. Coleridge Fine Arts*, No. 14-2303-EFM-GLR, 2015 U.S. Dist. LEXIS 17007, *2-4 (D. Kan. Feb. 12, 2015)). Yet Mr. Schwern engaged a process server, Andrew Weir, who is not a solicitor and could not make valid service on Mr. Plunkett in Ireland. Mr. Weir is from Northern Ireland, part of the United Kingdom, not Ireland, though Mr. Schwern misleadingly calls him "plaintiff's Irish representative." *See id.*; Doc. 67. Mr. Schwern seems to concede that Mr. Weir's extra-jurisdictional service was invalid and that his two other attempts to serve, through the Irish Central Authority, were not consummated. *Id.*; Doc. 97 p. 4. Yet Mr. Schwern's choice to not engage a solicitor in Ireland to effect service, and to instead rely on a non-solicitor from Northern Ireland and the Central Authority, long after their shortcomings were apparent, was not "outside plaintiff's actual control." Doc. 96. p. 9. His choice to make no attempt to serve after March 2016 did not manifest diligence under Or. Rev. Stat. § 20.075(1)(e). And his choice to maintain his claims despite his admitted failure to serve was reckless conduct under Or. Rev. Stat. § 20.075(1)(a) and objectively unreasonable under § 20.075(1)(b).

Mr. Schwern nowhere denies that his prayer for relief was objectively unreasonable. *See* Doc. 87 p. 4. He sought more than $30 million in damages, which would have been one of the largest defamation awards ever. *Id.* p. 10 (*citing State Farm & Case. Co. v. Radcliff*, 987 N.E.2d 121, 125 (Ind. Ct. App. 2013)). A prayer for relief "must meet the Rule 11 standard of reasonableness" before it is filed. *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1162 (9th Cir. 1987). A plaintiff and his attorney should not need discovery "to ascertain that the damages sought appear to bear a reasonable relation to injuries actually sustained." *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) (affirming Rule 11 sanctions over a complaint alleging more than $1,000,000 in damages from defamation). Mr. Schwern lacked a reasonable basis for his damages claims when filed, and his failure to discover any basis *post hoc* is due to his further failure to move

to obtain specified discovery relevant to his claims while the motion to strike was pending. *See Page v. Parsons*, 249 Or. App. 445, 456-57 (Or. Ct. App. 2012) (discussing Or. Rev. Stat. § 31.152(2)).

**V. Or. Rev. Stat. § 31.152(3) supports a full award of the costs requested.**

Oregon substantive law governs the relief available under Or. Rev. Stat. § 31.152(3). *Northon v. Rule*, 637 F.3d 937, 938-39 (9th Cir. 2011). Costs awarded under the statute "are not taxed as costs under 28 U.S.C. § 1920." *Accuardi*, 2014 U.S. Dist. LEXIS 55382, *13. Therefore, the costs awardable are not limited to taxable costs, as Mr. Schwern suggests. Doc. 96 p. 10.

Mr. Schwern objects in particular to only two costs: the $100 filing fee for Mr. Booth's *pro hac vice* admission, and "costs associated with the preservation of evidence." *Id.* Both should be awarded. Though not taxable under Section 1920, *see Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 957-58 (9th Cir. 2013), the *pro hac vice* admission fee should be compensated because it was "reasonably necessary to prosecute the case." Doc. 87-1 ¶ 21 (*quoting Adidas Am., Inc. v. Payless ShoeSource, Inc.*, No. 01-1655-KI, 2009 U.S. Dist. LEXIS 9482, *5-6 (D. Or. Feb. 6, 2009)). Also, the costs of "electronic evidence preservation [were] necessarily incurred as a result of Schwern's actions in this case." *Id.* ¶ 19. Mr. Schwern does not deny that the forensic imaging costs Mr. Plunkett bore to make copies of Nóirín's computer and electronic devices "were necessarily incurred as a direct result of Schwern's preservation demand." *Id.* ¶ 20; *see* Doc. 71-2 (email from Mr. Schwern's counsel, citing *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003)). They are taxable under 28 U.S.C. § 1920(4). *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 926-28 (9th Cir. 2015). These reasonably incurred costs are compensable.

## Conclusion

Therefore, and for the reasons given in the Fees Motion and Bill of Costs and their supporting exhibits, the Court should award Mr. Plunkett all costs and all fees requested therein.

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY FEES AND BILL OF COSTS

Dated: April 12, 2017

Respectfully submitted,

/s/  Dan Booth
Daniel G. Booth (admitted *pro hac vice*)

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing document by using the Court's ECF system on this __ day of April, 2017, thereby causing a true copy of said document to be served electronically upon counsel of record for each other party.

/s/  Dan Booth

DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR ATTORNEY FEES AND BILL OF COSTS